Argued before EHRLICH, C. J., and VAN WYCK and McCARTHY, JJ.
*Brunnemer & Bennett*, for appellant.    *Herman Fromme*, for respondents.

---

PETERS *v.* STUART.

(*City Court of New York, General Term.*    October 24, 1892.)

1. CLAIMS AGAINST DECEDENTS—LIMITATION OF ACTIONS.
Code Civil Proc. § 1822, providing that an action to recover a rejected or disputed debt against a decedent's estate must be begun within six months after the dispute or rejection, being of a penal character, should be construed strictly, and the limitation does not begin to run against a claimant, at whose house notice was left during her known absence, until she gets the notice on her return.

2. PAYMENT—PLEADING.
Where defendant pleads payment, and part payment is proved, the *onus* is on him to show any further payments.

3. EVIDENCE—VALUE OF SERVICES.
On a claim against a decedent's estate for attendance during illness and services connected with the burial, testimony as to the value of similar services is admissible.

Appeal from trial term.
Action by Catharine A. Peters against Sidney H. Stuart, as administrator of Sarah A. Peck.    Verdict and judgment for plaintiff.    Defendant appeals.    Affirmed.
Argued before EHRLICH, C. J., and VAN WYCK and McCARTHY, JJ.
*Theo. N. Melville*, for appellant.    *Seaman Miller*, for respondent.

McCARTHY, J.    This is an appeal from a judgment entered upon a verdict of a jury in favor of the plaintiff.    The plaintiff was a dressmaker, and with the money that she received at that occupation supported her household, consisting of herself, her husband, sister, and nephew; and, in addition, she had some boarders.    Her husband occasionally gave her some money, but she was the head of the household, supplied its running expenses with her own earnings, which she obtained from the practice of her trade and from her boarders, which she alone received, furnished the entire table and flat, and paid the rent thereof, and no other person received any other emoluments from either source.    In the latter part of June, 1887, Mrs. Sarah A. Peck, (a woman of considerable means,) asked the plaintiff to take her to board, and she and the plaintiff agreed upon the price that she was to pay, viz., $6 a

week, and her washing, 50 cents a week, and from that time she continued to board and room with the plaintiff, with the exception of a few weeks when she was absent, visiting, until the time of her decease, January 19, 1889. For about two weeks prior to her decease, Mrs. Peck was very ill, and did not arise from her bed without the aid of the plaintiff, and during the latter period the plaintiff gave her extraordinary care and nursing, being with her day and night, administering to her medicines, changing her bedding several times a day, and washing her person and apparel. The body of Mrs. Peck was covered with gangrene sores, loathsome and dangerous to touch. After Mrs. Peck's decease the plaintiff washed and prepared her body for burial, and the burial services were conducted at the plaintiff's home, pursuant to instructions that Mrs. Peck had given during her lifetime. Mrs. Peck had paid the plaintiff for her board up to April, 1888, but from that time she had paid but $72, leaving a balance due of $230 for board and washing up to the time of her decease; and for the extra care during the last two weeks of her life,.which her physician said was worth $25 a week, making $50; and for washing and preparing the body of deceased for burial $25,—making in all, less the sum of $72 paid on account, the sum of $233. The court refused to allow the jury to give any sum for the use of the plaintiff's house for burial.

There is no dispute as to the facts, for the defendant offered no evidence whatsoever in rebuttal or to sustain the allegations set forth as a counterclaim, and, at the conclusion of the trial, "the defendant's counsel in open court, and the jury, stated that Mrs. Peck had made the agreement with Mrs. Peters (the plaintiff) for the board, as testified to by Miss Jackson, and that she was not a pensioner upon that family." The facts bearing on the question of costs are as follows: The defendant's intestate died January 19, 1889. Letters of administration upon her estate were issued to the defendant, February 11, 1890, and an order to advertise for claims was entered September 27, 1890. The claim herein was presented in writing to the defendant, November 17, 1890. The clerk of the attorney for the defendant took a written notice of rejection, in a sealed envelope, to the home of the plaintiff, November 19, 1890, but the plaintiff was not at home at that time, and the clerk ordered it to be given to the plaintiff when she returned. The plaintiff did not return until December 6, 1890, when she first received the notice. The defendant subsequently refused to refer the claim under the statute, so this action was begun by the service of a summons and complaint, May 23, 1891, within six months from the time that the plaintiff received the notice of rejection. The defendant introduced no evidence whatsoever in support of the counterclaim for $500 set up in his answer.

The first question to determine is, was this claim barred by the short statute of limitation? Section 1822, Code Civil Proc., is as follows: "Where an executor or administrator disputes or rejects a claim against the estate of the decedent, exhibited to him either before or after the commencement of the publication of a notice, requiring the presentation of claims, as prescribed by law, unless the claim is referred, as prescribed by law, the claimant must commence an action for the recovery thereof against the executor or administrator within six months after the dispute or rejection, or, if no part of the debt is then due, within six months after a part thereof becomes due, in default whereof he, and all persons claiming under him, are forever barred from maintaining such an action thereupon, and from every other remedy to enforce payment thereof, out of decedent's property."

There must be a personal notice to the owner of the claim, and a strict compliance with all the provisions of the statute. VAN BRUNT, J., in *Van Saun* v. *Farley*, 4 Daly, 167, says: "It will not be pretended that a mere rejection of a claim, without notice of such rejection to the owner of the claim, would set the statute in motion, because there is no other way that such notice, by which the owner of the claim can be made aware that his action must

be commenced within six months after such rejection, or his right to bring an action will be lost. The statute does not mean by rejection merely a mental emotion, but the action of the mind must be followed by some outward act, by which the owner of the claim may be apprised of the result arrived at." It has been repeatedly held that this "statute, unlike the other statutes of limitations, is not a statute of repose, but is rightly penal in its character, and should be strictly construed." *Broderick* v. *Smith,* 3 Lans. 27, and cases there cited. The mere leaving of the notice of rejection at the residence of the claimant on November 19, 1890, while she was absent from the city, such statement being made to the server at the time, is not sufficient to bring such notic<  · her knowledge, and thus bar her from her claim, unless the service w　ade upon the person at such residence with her consent and authority. No ᵤach evidence appears in this case. The fact is thatᵉthe claimant did not return until December 6, 1890, and then for the first time received such notice and knew of the rejection of her claim. Under the decisions, the statute could only begin to run from that date. The action was commenced on May 23, 1891, and within six months after the rejection of the claim, and is therefore not barred by the statute of limitations. The party invoking the aid of the same must show a strict compliance with all of its provisions. See *Hoyt* v. *Bonnett,* 50 N. Y. 542.

There is sufficient evidence that the defendant's intestate boarded and lodged with the plaintiff at an agreed sum, and, if there was any need of more proof, this is supplied by the admission of the defendant at the close of the case. It is further testified that in April, 1888, the defendant's intestate said that she had loaned out her money and had not the money to pay her bill; she having paid up to that time, and no claim being made for the time prior. That after that time the witness saw Mrs. Peck pay $50, and at another time $22, making in all $72. Immediately upon such proof being presented, the defendant having pleaded payment, the *onus* was on him to show any further payments. This he did not do.

The jury had the right to consider the evidence of the other witnesses in regard to services rendered similar to those of the plaintiff, and to say in their judgment what they were reasonably worth. All the questions of fact were fairly and properly submitted. We find no error, and the judgment should be affirmed, with costs. All concur.