(30 App. Div. 524.)

### JOHN POLHEMUS PRINTING CO. v. WYNKOOP et al.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

LANDLORD AND TENANT—COVENANT TO RENEW—BREACH.

> The defendants leased certain premises to the plaintiff "for three years from May 1, 1892, at the yearly rent of $7,200, with the privilege of renewal for five years at the same rent, when a new lease is given the parties of the first part by the owner of the building." In addition thereto, the defendants gave to the plaintiff a bond conditioned absolutely upon the giving of such a renewal term. Before the original term expired, the defendants explicitly informed the plaintiff that the landlord had "jumped the rent" on them, and that plaintiff would have to pay $8,000 during the renewal term. Thereupon plaintiff took a lease for the further term, directly from the owner, at $8,000, and brought this action upon the bond for damages. *Held*, that the facts constituted a cause of action, and that the complaint was improperly dismissed.
>
> Ingraham, J., dissenting.

Appeal from trial term.

Action by the John Polhemus Printing Company against Susie Wynkoop and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

James Parker, for appellant.
M. A. Crook, for respondents.

PATTERSON, J. From a judgment dismissing a complaint in an action upon a bond, the plaintiff appeals. Defendants claim, in the first place, that, in consequence of the vagueness of the condition of the instrument sued on, no enforceable obligation is made to appear. The bond was executed by Matthew B. Wynkoop and Harry C. Hallenbeck, composing the firm of Wynkoop & Hallenbeck, and was given by them to the plaintiff in connection with a lease made by Wynkoop & Hallenbeck to the plaintiff of certain premises in the city of New York. The lease and bond bear date December 14, 1891. The lease was "for the term of three years from the first day of May, 1892, at the yearly rent or sum of $7,200 and the water tax, with the privilege of renewal for five years at the same rent, when a new lease is given the parties of the first part by the owner of the building." The bond given in connection with this lease is thus conditioned:

"In case the said Wynkoop & Hallenbeck fail to give the said Polhemus Printing Company a renewal of the lease of the premises, 121 Fulton street

and 48 Ann street, at the same rent (for a further term of five years), and if such renewal is given to the said John Polhemus Printing Company, then this bond shall be null and void."

It is quite apparent that something is omitted from this bond, but it was delivered as an operative instrument, and the intention of the obligors is unmistakable.   It is altogether plain that the condition upon which the bond was to be enforceable is the failure to give the renewal of the lease of the premises at the same rent stipulated to be paid in the lease in connection with which the bond was given; and it is stated in so many words that, if the renewal is given, then the bond shall be null and void.   Notwithstanding the elliptical sentence, its meaning is plain, and it requires neither reformation of the instrument nor extraneous evidence to establish the intent of the parties. The bond and the lease, as is properly claimed, must be read together; and, so doing, it is manifest that the former was given as an indemnity to the plaintiff against a failure of the obligors to give a renewal lease at the expiration of the three years at the same rent as that stipulated for in the then-executed lease.

But it is contended that the condition of the bond in connection with the terms of the lease respecting a renewal created an obligation on the part of Wynkoop & Hallenbeck to grant the renewal at the same rent only "when" they acquired themselves a further lease of the premises from the owner of the building; and that hence, by a proper construction of the whole agreement between the plaintiff and Wynkoop & Hallenbeck, no cause of action could arise until a new lease was procured by Wynkoop & Hallenbeck; and they, having so procured one, refused to grant a new term to the plaintiff at the old rental.   It appears that on the 17th day of April, 1894, the plaintiff took a new lease of the premises from the owner from the 1st day of May, 1895, for the term of five years, at a rental of $8,000 a year, payable monthly.   The three-years term of the original lease between the parties would not expire until the 30th of April, 1895.   It is thus seen that the plaintiff, more than a year before the expiration of the original term, entered into a new lease, as tenant directly of the owner, which fact the defendants set up as constituting a full discharge from the obligation of the bond; insisting that, by reason of the acts and interference of the plaintiff, it prevented Wynkoop & Hallenbeck from acquiring a new lease which would enable them to relet to the plaintiff on the terms of their covenant.   There is abundant proof in the case to show that, notwithstanding the fact that the original lease had yet more than a year to run, both the plaintiff and Wynkoop & Hallenbeck took up the subject of the renewal of the lease, in April, 1894, intending then to dispose of it finally.   The relations of the parties as affected by the condition of the bond are constituted by their acts relating to the procurement of a renewal of the lease.   The effect of the testimony is to establish that these parties, at the date last mentioned, began, continued, and ended negotiations respecting that matter.   As early as January, 1894, Mr. Tobin, who was the agent of the plaintiff, had an interview with one of the defendants concerning the renewal of the lease; and he was informed that Wynkoop & Hallenbeck were not then so situated as to enable

them to attend to it at once, but that it would be shortly adjusted. In April, 1894, Mr. Tobin was told by one of the defendants that the owner of the premises had been seen, and that, if the plaintiff wanted a renewal of the lease, it could be had for $8,000 a year. Mr. Tobin swears that he said to Mr. Hallenbeck that Mr. Polhemus had sent him to get a definite answer in regard to the renewal, and that Mr. Hallenbeck said: "Well, now it will cost you $8,000. They jumped the rent on me." He then asked Hallenbeck if that was final, and he said it was, whereupon Mr. Tobin said, "Then it is simply pay $8,000 or get out," to which was replied, "Yes, pay $8,000 or get out." Mr. Tobin further testified that he took that information to Mr. Polhemus. That same afternoon a new lease was negotiated between Tobin and the owner of the building, and on the same day a letter was written by the plaintiff to Wynkoop & Hallenbeck, saying: "We propose at once, for our own protection, opening negotiations with the owners of the building or their agents." On the next day, the lease was taken directly from the owners of the building.

In view of this testimony, which is wholly uncontradicted, it appears that Wynkoop & Hallenbeck deliberately placed themselves in the position of refusing to treat further with the plaintiff concerning a renewal of the lease except upon the basis of the payment of rent at $8,000 a year. Under those circumstances, and situated as the plaintiff was, it had a right to rely upon the attitude which Wynkoop & Hallenbeck assumed in the transaction, and to endeavor to protect itself the best way it could, by negotiating directly with the owner of the building; for it is to be remembered that the declaration made to Tobin was that, as between the plaintiff and Wynkoop & Hallenbeck, the former must pay the additional rent or quit the premises. The plaintiff was entitled to construe that as a notification on the part of Wynkoop & Hallenbeck that they would proceed no further in the effort to procure a renewal lease at a rental of $7,200 a year. It must be regarded as a distinct and unqualified notice to the plaintiff that they would not get a renewal lease from Wynkoop & Hallenbeck on the terms stipulated in the original lease. We think that the plaintiff was entitled to regard the defendants as then and there abandoning all intent to carry out that covenant of the lease which provided for a renewal at the rate of $7,200 a year. Whatever took place between the plaintiff and Wynkoop & Hallenbeck subsequent to April 16th is quite immaterial. The defendants took their stand on April 16th, and on that day put the plaintiff in a position entitling it to protect itself. In that situation the words of the covenant relating to the renewal, which provided that "when a new lease is given to the parties of the first part by the owner of the building," cease to be a condition or limitation of the plaintiff's right to look to the bond. They would be operative in the event of Wynkoop & Hallenbeck having done all that was required of them in good faith, and, in view of all the circumstances of the case, to procure a new lease, under which they could grant a term to the plaintiff. Wynkoop & Hallenbeck disabled themselves from obtaining, or abandoned the effort to obtain, a new lease, under which they could make a grant to the plaintiff. The action is brought upon the

condition of the bond and its absolute agreement to give the renewal, or, in the alternative, pay the stipulated sum. That condition immediately becomes operative by reason of the course pursued by Wynkoop & Hallenbeck in the matter. As said before, reading the bond and the lease together, if any doubt exists as to the plaintiff's right to a renewal being dependent upon Wynkoop & Hallenbeck getting one, the bond, at all events, was given to insure performance of the covenant of the lease, and as security for nonperformance of that covenant. The case shows plainly that Wynkoop & Hallenbeck broke the covenant of the lease. They did not grant a renewal. Because they could not is the result of their own choice. They put themselves in such a position that they washed their hands of the whole subject. They turned the plaintiff over to the owner, and allowed it to shift for itself. The bond then comes in as the contract establishing the right of the plaintiff, and gives to it a cause of action for the breach of the condition.

The point that the complaint was properly dismissed as to the defendant executrix, the bond being a joint one, and not enforceable against the estate of Mr. Wynkoop, is not well taken. No such defense is set up, nor was the question raised by a motion to dismiss. The point is taken here for the first time, and the objection is too late even if it were otherwise tenable.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

BARRETT, J. (concurring). Taking the covenant in the lease by itself, there might be doubt whether Wynkoop & Hallenbeck's obligation to give a renewal was not conditioned upon their obtaining one from the owners. The action, however, is not brought upon this covenant, but upon the bond. The latter contains an absolute agreement to give the renewal, or pay the penalty; and, in view of this fact, it is somewhat difficult to see the force of the contention that the obligation is conditional. Having thus agreed absolutely to give the renewal upon the same terms as before, they necessarily took the risk of obtaining themselves such further lease as would enable them to perform. Their absolute agreement imported that they would secure the means of compliance; either that, or that they would pay the penalty. The most that can be claimed by the respondents is that the lease and bond should be construed together. So construed, there is no ambiguity. The bond merely dispels any doubt left by the lease, and shows that the liability assumed was absolute. Thus, it either clarifies the understanding contemplated by the lease, or else it superadds a liability not imposed thereby. There is no alternative. The lease certainly does not qualify the engagement explicitly set out in the bond. In this view, the action or nonaction of Wynkoop & Hallenbeck becomes immaterial. If they did not get the renewal, for whatever reason, they became liable upon the bond. In fact, if their agreement was conditional, I do not see how they could be held liable merely because they admitted to the plaintiff their inability to get a renewal from the owners upon the same terms. Bad faith or laches might make them liable

although the agreement was conditional; but there is no such claim. They tried honestly to get the renewal at the same rental, and failed. As stated, however, I think that their obligation was absolute.

I should add that the action of the plaintiff in taking a lease direct from the owner was not a defense to the defendants' failure to fulfill their absolute obligation. The plaintiff did not take this independent step until Wynkoop & Hallenbeck had explicitly refused to furnish the renewal except at the increased rental. This refusal was a breach of the bond, and the plaintiff's cause of action thereunder accrued at once. The plaintiff had a perfect right thereafter to protect itself by negotiations with the owner. That was an independent act, which in no wise affected its then-accrued cause of action. I concur, therefore, in the result arrived at by Mr. Justice PATTERSON.

The special defense set up in behalf of the defendant executrix was plainly insufficient. In addition to the fact that it was not pleaded, the amendment to section 758 of the Code of Civil Procedure made in 1877 (chapter 416, Laws 1877) abrogates the old rule holding that the death of a joint obligor discharges his liability.

McLAUGHLIN, J., concurs.

INGRAHAM, J. I cannot concur with Mr. Justice PATTERSON. The complaint alleges that on the 14th of December, 1891, the firm of Wynkoop & Hallenbeck were the lessors of certain premises in the city of New York, and on that day did execute and deliver to the plaintiff a lease of the said premises for the term of three years from the 1st day of May, 1892, with a privilege of renewal for five years from the expiration of the same, and at the same rental; and that on the same day, in consideration of the said lease, the said Wynkoop & Hallenbeck, for the purpose of securing to the plaintiff the performance of said agreement and covenant of renewal of the said lease for the said term of five years, did execute and deliver to the plaintiff their certain bond and writing obligatory, under seal, in the sum of $2,500, wherein and whereby the said Wynkoop & Hallenbeck became bound to pay to the said plaintiff the said sum of $2,500, conditioned as follows: "In case the said Wynkoop & Hallenbeck fail to give to the said John Polhemus Printing Company a renewal of the lease of the premises 121 Fulton street and 48 Ann street at the same rent, and for a further period of five years, and if said renewal is given to the said John Polhemus Printing Company, then this bond shall be null and void,"—and a copy of said bond is annexed to the complaint. The complaint then alleges the death of Wynkoop, one of the obligors, and the appointment of one of the defendants as his executrix, and that the defendants have failed and neglected to give to the plaintiff a renewal of said lease of the said premises for a further period of five years from the expiration of the original lease. The defendants answered separately. They admit the execution by the firm of Wynkoop & Hallenbeck of a lease of the premises, and the execution by Wynkoop & Hallenbeck of a further instrument to the plaintiff, but deny that the instruments are correctly set forth in the

complaint, admit the death of Wynkoop, and the issuance of letters of administration to the defendant executrix, and admit that the defendants have not given to the plaintiff a new lease, or any renewal of the lease, upon the premises mentioned in the complaint. The case came on for trial, and the plaintiff introduced in evidence the lease from Wynkoop & Hallenbeck to the plaintiff, and also the instrument given as alleged in the complaint, for the purpose of securing to the said plaintiff the performance of the said agreement and covenant of renewal of said lease for the said term of five years. Thus, from the allegations of the complaint it appears that these two instruments were executed simultaneously, and for the purpose of securing to the plaintiff the performance of the covenant of renewal. Upon this allegation of the complaint, upon which the plaintiff bases the cause of action, unless there was a breach of the covenant for a renewal of the lease, the obligation upon which the action was brought was void, and no cause of action proved. The covenant of renewal contained in the lease is as follows: "With the privilege of renewal for five years at the same rent, when a new lease is given parties of the first part by owner of the building." It was not alleged in the complaint, nor was it proved upon the trial, that any new lease was ever given by the owner of the building to the firm of Wynkoop & Hallenbeck; but it appeared that, pending the negotiations for a new lease between the owner and plaintiff lessors, the plaintiff obtained from the owner of the building a lease of the premises to itself, and thus put it out of the power of the firm of Wynkoop & Hallenbeck to obtain such a new lease.

The fundamental question is whether there was any breach of this obligation on behalf of the plaintiff's lessors to give plaintiff a renewal lease. This obligation seems to me to be conditioned upon the plaintiff's lessors obtaining a new lease from the owner of the building. There is no express covenant to grant a renewal lease. A privilege for a renewal of this lease when a new lease was given to the plaintiff's lessors by the owner of the building was given to the plaintiff. Nor was there any covenant, either express or to be implied, that the plaintiff's lessors would either apply for or obtain such a new lease. The privilege which the plaintiff was granted by this agreement was to obtain a renewal lease from their lessors when the lessors obtained a new lease from the owner, thus preventing the plaintiff's lessors from obtaining a new lease from the owner, and then ejecting the plaintiff from the premises; but the privilege itself never was to become operative until the plaintiff's lessors did obtain such a new lease from the owner. No other construction can be given to the instrument, and the plaintiff does not allege that this agreement as executed did not express the real intention of the parties. To hold that there was any obligation upon the plaintiff's lessors to obtain a new lease upon any terms and conditions imposed by the owner would be to place the plaintiff's lessors at the mercy of the plaintiff and the owner,—a position in which it is certainly impossible to imagine that any person would voluntarily place himself. Thus, assuming that the instrument sued on was what the plaintiff alleged it to be, namely, an instrument given to secure the performance of the agreement and

covenant of renewal of said lease, there was certainly no proof there was a breach of covenant contained in the lease, the event upon which such covenant was to depend, viz. plaintiff's lessors obtaining a new lease from the owner of the building never having occurred. Plaintiff's lessors had never obtained from the owner of the building a new lease of the building. A strict construction of the instrument sued on standing by itself makes the instrument void. By its terms, in case Wynkoop & Hallenbeck failed to give to the plaintiff a renewal of the lease, and if such renewal is given, the bond is declared null and void. It is quite clear, however, that this does not express the intention of the. parties, because the conditions substantially nullify the instrument. It is not entirely clear, however, whether it was intended to provide that in case the firm of Wynkoop & Hallenbeck failed to obtain from the owner a renewal of the lease, or such renewal is then given to the plaintiff, the bond should be void, or whether it was intended to insert a provision that, in case the plaintiff's lessors failed to give to the plaintiff a renewal lease, then the bond should be in full force and effect, as claimed by the plaintiff. Such a clause would seem to be useless, as by the bond itself the obligation is created, and it was not necessary to provide a condition upon which it should be valid. It was only necessary to insert the condition upon which it should be void. No evidence is given by either party tending to show what was the real intention of the parties; and plaintiff must rely upon the allegation of the complaint that the instrument was given to secure performance of the obligation of the plaintiff's lessors as contained in the lease for a renewal thereof; and there never has been, as we have seen, a breach of that agreement for a renewal. Upon every aspect of the case, whether we assume that the obligation was given merely to secure the performance of this covenant of renewal, or that it was a bond which should be construed as standing by itself, the condition of the obligation was never broken, and no cause of action was proved.

The refusal of the plaintiff's lessors to give a renewal lease did not impose upon them any liability. They were under no obligation to give such a renewal until they had themselves obtained a new lease from the owners. And a demand for such a renewal over a year before the lease expired, and a refusal then to give such renewal, was not a breach of a covenant to give a renewal when a new lease was obtained from the owner. The plaintiff's lessors then had the right to say, "We will not take a new lease from the owners unless you are willing to pay an increased rent." That is just what they did say; and plaintiff understood what was said at that time, as it at once took a lease from the owners. But, in any event, the dismissal as to the defendant executrix was clearly correct. The bond sued on was joint, not joint and several; and the death of one joint obligor discharged his representatives from liability to the obligee, and the survivor alone can be sued.

At the end of the case, the counsel for the defendant executrix moved for a dismissal of the complaint, on the ground that the bond sued on was a joint bond, and not several, and that no cause of action survived the death of Wynkoop as between Wynkoop's estate and the

.creditors. That motion seems to have been denied, but subsequently the court dismissed the complaint as to both defendants; and, as the dismissal as to the executrix was right, that dismissal should not be reversed upon the appeal. I think, however, that, as there was no breach of the covenant of renewal, no cause of action was alleged, and that the judgment should be affirmed.