"Where an express trust shall be created, for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees; but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers, contained in the third article of this title."

When we consider these provisions of the statute, there does not seem to be room for any assumption that an express trust was not created under which the whole title to the real estate was vested in the trustees, and the persons beneficially interested took no interest or estate in the lands until after the termination of the trust, which event did not occur until after the conveyance in question.

PATTERSON and LAUGHLIN, JJ., concur.

(67 App. Div. 434.)

POTTS v. BALDWIN et al.

(Supreme Court, Appellate Division, Third Department. December 7, 1901.)

1. EXECUTORS—CLAIM AGAINST ESTATE—REJECTION—SUIT AGAINST EXECUTOR—LIMITATION—SURROGATE'S COURT—FILING NOTICE OF REJECTION—NOTICE TO CLAIMANT.

The mere filing of notice of rejection of a claim against an estate does not obviate the necessity of bringing home to the claimant knowledge of such rejection, in order to set running the statute of limitations, under Code Civ. Proc. § 1822, providing that, where an executor disputes or rejects a claim against the estate of the decedent, the claimant must sue to recover the same within six months after the dispute or rejection.

2. SAME—LIMITATIONS—SUSPENSION.

Where, in a proceeding in the surrogate court, upon the filing of an account by one of two joint executors, the other executor objected to the allowance of a certain claim, and then suggested that it might be better for claimant to bring an action before a referee, such suggestion did not operate to suspend the running of limitations provided for in Code Civ. Proc. § 1822.

3. SAME—LIMITATIONS—NOTICE TO ATTORNEY.

Code Civ. Proc. § 1822, being highly penal, the mere fact that an attorney who had a claim against a decedent's estate for collection appeared in the proceedings in the surrogate's court in which such claim was rejected was insufficient to charge the claimant with the notice of such rejection necessary to set the limitation running, where it did not appear that the attorney appeared especially for claimant.

4. SAME—JOINT OBLIGORS—DEATH—ACTIONS—JOINDER OF EXECUTOR WITH SURVIVORS.

Under Code Civ. Proc. § 758, providing that, where an action is pending, the estate of a person jointly liable upon contract with others shall not be discharged by the death of such person, but the court may order the bringing in of the representative of such decedent, the executor of the estate of a decedent who was jointly liable on a note with others may be joined as a codefendant with such others in an action on such note.

5. SAME—EXHAUSTING REMEDY AGAINST SURVIVORS.

Although Code Civ. Proc. § 758, abrogated the common-law rule that the death of a joint obligor terminated his liability, the party seeking to enforce the joint obligation must exhaust all his remedies against the survivors before he can proceed against the estate of the decedent.

**6. SAME—COMPLAINT—NECESSARY ALLEGATIONS.**

A complaint in an action against the estate of a deceased joint obligor must allege that complainant has exhausted his remedies against the surviving obligors, or that they are insolvent.

**7. SAME—CAUSE OF ACTION—DEMURRER—WAIVER.**

A complaint in an action against the estate of a decedent to enforce a joint obligation which fails to allege that complainant's remedies against the surviving obligors have been exhausted, or that they are insolvent, does not state facts sufficient to constitute a cause of action; and such objection is not waived by failure to demur, under Code Civ. Proc. § 499, providing that all objections not taken by demurrer or answer are waived, except objections to the jurisdiction, and for. failure to allege facts sufficient to constitute a cause of action.

**8. SAME—COMPLAINT—NECESSARY ALLEGATIONS—STATUTORY CHANGE OF RULE.**

Code Civ. Proc. § 758, does not obviate the necessity of alleging in the complaint in an action against the estate of a deceased joint obligor, to enforce a joint obligation, that complainant's remedies against the surviving obligors have been exhausted.

Appeal from judgment on report of referee.

Action before a referee by Mary Potts against Francis E. Baldwin and others. Judgment in favor of defendants entered on motion to dismiss the complaint for want of sufficient facts.

The following is the opinion in the court below (CLARKE, Referee):

This is an action to recover upon a joint promissory note which is as follows:

"$1,000.　　　　　　　　　　　　　　Elmira, N. Y., May 21, 1892.

"Two years after date, we promise to pay to the order of Mary Potts one thousand dollars ($1,000), with interest. Value received. Interest payable semiannually.

"Francis E. Baldwin,
"Myra S. Daggett,
"Julia E. Smith, and
"Ophelia C. Dounce."

There is no disputed question of fact in this case. The plaintiff loaned to the makers of the note $1,000, with the knowledge that it was borrowed to be used for the benefit of the W. C. T. U. Association. The money was received by Ophelia C. Dounce, and the interest was paid by the W. C. T. U. Association. Subsequently, in the month of June, 1895, Ophelia C. Dounce, one of the joint makers, died. The defendant Fred N. Dounce and the defendant Baldwin are her executors. The plaintiff placed the note in the hands of Attorneys Baldwin & Baldwin, composed of Erwin J. Baldwin and the defendant Francis E. Baldwin,—just when, does not appear specifically. The claim was presented to Fred N. Dounce, as executor, on or about the 1st day of July, 1897. October 5, 1897, Francis E. Baldwin filed an account of his proceedings as executor of the will of Ophelia C. Dounce in the surrogate's court (his coexecutor, Fred N. Dounce, not joining), and a petition for a judicial settlement. Schedule C of the account is as follows: "A statement of all claims against the estate of Ophelia C. Dounce, deceased, which have been presented to said executors, excepting .claims which have been allowed and paid by said executors. * * * Mary Potts, $1,000 and interest." A citation directed to Fred N. Dounce and the plaintiff was issued. Oct. 29, 1897, defendant Dounce appeared in surrogate's court and filed objections to the account, in part as follows: "The said Fred N. Dounce, as one of the executors of said estate, hereby objects to and rejects the claims set forth in Schedule C, to wit, * * * 'Mary Potts for $1,000 and interest,' and states, upon his information and belief, that none of said claims are a just and proper charge against the estate, and, if allowed by the acting executor, Francis E. Baldwin, such allowance is done wholly

without his consent or knowledge, and that said claims, or no part of them, should be allowed against this estate." It is conceded that the plaintiff was a party to the proceedings in the surrogate's court. It does not appear from the records of the surrogate's court in evidence in this case that E. J. Baldwin appeared there specifically for the plaintiff in relation to this note. The evidence before us on that point is (plaintiff testifying): "Q. Mr. E. J. Baldwin: He has charge of this note for you,—for its collection? A. Yes; Baldwin & Baldwin. Q. Been in his hands? Mr. Baldwin, especially, has been looking after it? A. Yes." The defendant Dounce answers separately, pleading the short statute of limitations,—that this action was not begun within six months after the rejection of the claim. Code Civ. Proc. § 1822. There is no evidence that the plaintiff received personal notice of the rejection of her claim. It appears by proof and concession that when before the surrogate there was a discussion as to trying the matter before him but counsel for the defendant Dounce doubted his jurisdiction to try the issue, and suggested that an action be brought and the matter tried before a referee. The action was brought May 7, 1898; more than six months intervening between that date and the rejection of the claim. The rejection contained in the objections of F. N. Dounce is sufficient in form and unequivocal and explicit.

We have, therefore, to determine whether the presence of E. J. Baldwin, in whose hands the plaintiff had previously placed the note for collection, when the objections were read, is sufficient notice to her. He was the attorney of record and appeared for the accounting executor. It does not appear that he appeared then for her, although such might possibly be inferred from the evidence. The surrogate's court has power to determine the fact whether or not a claim has been rejected, and to declare it allowed, if found to have been presented and the rejection unduly delayed. Browne v. Lange, 4 Dem. Sur. 350; In re VonDerlieth's Estate, 25 Misc. Rep. 256, 55 N. Y. Supp. 428; In re Miles' Estate, 33 Misc. Rep. 147, 68 N. Y. Supp. 368. Had either of these questions been at issue before the surrogate, the plaintiff, having been made a party, would have been bound, no doubt, by a determination thereon. While the surrogate has such power, we are unable to adduce any authority to the effect that the filing of a notice of rejection in a proceeding in the surrogate's court to which the claimant was an involuntary party obviates the necessity of bringing knowledge of the rejection of her claim home to the claimant, in order that the statute may be set running against her. We might arrive at a different conclusion had the proceedings been instituted by the claimant for the purpose of compelling the payment of her claim. Neither does the suggestion regarding the bringing of this action, in place of submitting the disputed claim to the surrogate, operate to suspend the running of the statute; there being nothing in that discussion tending to lull the plaintiff into inactivity, nor to prevent the bringing of the action within the limitations. Cornes v. Wilkin, 79 N. Y. 129; Flynn v. Diefendorf, 51 Hun, 194, 4 N. Y. Supp. 934. This statute has been held to be highly penal, and must therefore be strictly construed. Elliott v. Cronk's Adm'r, 13 Wend. 35; Broderick v. Smith, 3 Lans. 27. In applying a rule so drastic in its effect, we should not, it seems to me, indulge the presumption that the attorney who held this claim for collection communicated the conditions of the objections to his client. To adopt such a rule subjects the claimant to the forgetfulness, negligence, or even criminal connivance of her attorney. These conclusions are in accord with Van Saun v. Farley, 4 Daly, 166. Peters v. Stewart, 1 Misc. Rep. 8, 20 N. Y. Supp. 661, is to the effect that a written notice of rejection, left at the home of the claimant in her absence, does not set the statute running, until actual notice was received by her,—in other words, that the notice must be personal,—quoting with approval the opinion in Van Saun v. Farley. But Peters v. Stewart was reversed by the general term of the New York common pleas. 2 Misc. Rep. 357, 21 N. Y. Supp. 993. The facts stated in the opinion are: The executor verbally "disputed" and "rejected" the claim to the person who presented it on behalf of the claimant; and it was held a sufficient notice of rejection, and further held that the leaving of the notice (written) at the claimant's home during her temporary absence, with a person of suitable age and discretion, was

74 N.Y.S.—42

tantamount to personal notice, and therefore set the statute running. We have here conflicting decisions of the same court, one in 1871, and the other so late as in 1893. We hold, however, notice in this case to have been insufficient to set the statute running, believing that a rule so stringent must be supported by the fullest possible diligence on the part of the one invoking it, to bring home to the claimant knowledge of its rejection.

Prior to the enactment of Code Civ. Proc. § 758 (amended in 1877), the personal representatives of a deceased joint debtor could not be charged directly in an action with the other joint debtors, while the deceased person whom they represented was a mere surety or a joint obligor. This, however, was not a rule of liability. It was rather a rule of procedure. Baskin v. Andrews, 53 Hun, 95, 6 N. Y. Supp. 441. Section 758 was commented upon in Randall v. Sackett, 77 N. Y. 480, as follows: "It is not merely remedial, relating to the mode of civil procedure upon the death of a person who has entered into a joint obligation. On the contrary, it imposes an obligation where none existed before." Section 758 abrogated the old rule, holding that the death of a joint obligor discharged his liability. Printing Co. v. Wynkoop, 30 App. Div. 524, 52 N. Y. Supp. 420. We are satisfied that the contention of the defendant Dounce that he could not be joined as a defendant in this action is not sustained by the authorities. Richardson v. Draper, 87 N. Y. 337; Long v. Stafford, 103 N. Y. 275, 8 N. E. 522; Douglass v. Ferris, 63 Hun, 414, 18 N. Y. Supp. 685; Id., 138 N. Y. 192, 33 N. E. 1041, 34 Am. St. Rep. 435.

At the opening the defendant's attorney moved to dismiss the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The motion was denied, and at the close of the evidence the defendant renewed his motion upon the same grounds, and the further ground that the evidence upon the trial failed to state a cause of action against the defendant Dounce as executor, etc.; and upon the submission of this case he urged that the plaintiff could not recover under the pleadings. The complaint contains no allegations to the effect that the plaintiff had exhausted her remedies against the surviving joint debtors, or of their insolvency. The defendant did not demur, but the objection was not therefore waived. Code Civ. Proc. § 499. The plaintiff has not amended her complaint, nor supplied the facts by proof. Under the decisions upon that point, we are constrained to hold the omission in that particular fatal to a maintenance of this action against the defendant Dounce. It is well settled in this state that the creditor of a firm cannot proceed against the estate of a deceased partner without showing either that the surviving partners have been proceeded against to execution at law, or that they are insolvent. Hoyt v. Bonnett, 50 N. Y. 545. The doctrine has been reaffirmed by this court since the enactment of the Code that the personal representative of a deceased partner cannot be joined as a party defendant with the surviving partner in an action for a partnership debt when the complaint does not show the plaintiff's inability to procure satisfaction from the survivor. Voorhis v. Childs' Ex'r, 17 N. Y. 355. In Barnes v. Seligman, 55 Hun, 339, 8 N. Y. Supp. 834, questions similar to these in this case were involved under similar facts. We quote from the opinion: "Another question involved is the referee's ruling dismissing the complaint as to the executors of Seligman. Seligman died before the action was commenced, and the suit was brought against Brown and the executors of Seligman, without any allegation whatever as to the insolvency of Brown. It seems to us that the want of this allegation was fatal to the right of the plaintiff to recover as against the executors of Seligman. The contract sued upon is a joint obligation. It is clearly so from its language. And the general rule which prevails in reference to a contract is that, if several persons agree to perform a particular act, they are bound jointly, and not severally, in the absence of express words creating a several liability. This being a joint contract, at common law the death of Seligman freed him from the joint liability and absolutely discharged his estate. Equity, however, in order to prevent hardships of this kind arising from the technical rule of law, permitted the estate of a joint obligor to be sued on the allegation that the creditor could not obtain satisfaction from the survivor, because of his insolvency or

otherwise. This rule of equity has been adopted in this state, and is a part of its settled law. It is urged, however, upon the part of the appellant, that, there never having been any demurrer in this case, it has been held sufficient to prove the survivor's insolvency at the trial, in which case the complaint should be amended to conform to the facts proved. It is a familiar rule that a complaint cannot be amended to conform to the facts proved, where an objection has been taken in time to the proving of the facts because of the insufficiency of the pleadings; and the cases of Van Riper v. Poppenhausen, 43 N. Y. 68, Bank v. Morgan, 73 N. Y. 593, and Pope v. Cole, 55 N. Y. 124, 14 Am. Rep. 198, in no way conflict with this proposition. The questions decided in those cases were that where proof was given of the insolvency, under proper averments, a recovery might be had against the representatives of the deceased partner. It is further sought by the appellant to limit this doctrine to cases of partnership contracts. But we see no reason for the limitation. In fact, in the case of Pope v. Cole the contrary doctrine is expressly recognized, although, perhaps, the question was not involved in the case. But that the principles upon which those cases proceed, and the right to pursue the personal representatives rests, certainly make no such distinction between the cases, is apparent from the fact that it is not a legal right which is attempted to be enforced, but an equitable one. It was because equity intervened for the purpose of relieving from the hardship which arose by the discharge of the estate of a joint obligor who died, that any right of recovery whatever exists; and, in order that the hardship should exist, it is necessary that the impossibility of collecting the debt from the surviving obligor should appear. And hence arises the rule that, upon showing the insolvency of the surviving obligor, the estate of the deceased obligor may be called upon to pay. It being thus an equitable right, simply, which is enforced, the right to recover does not depend upon a question of partnership, but simply upon that fact that in law the estate of the joint obligor is discharged upon his death from any obligation under the contract. We think that, without the allegations as to the insolvency of Brown, it is clear that no action could be maintained against the estate of Seligman. The sections of the Code to which attention has been called do not seem to apply to the question here, this action being brought against a survivor of two joint obligors and the representatives of one who is dead." Upon appeal the court of appeals affirmed the above (Barnes v. Brown, 130 N. Y. 386, 29 N. E. 763) and we quote from the opinion: "The contract was the joint undertaking of Brown and Seligman. The latter having died before the action was commenced, his personal representatives were joined as defendants with Brown. The complaint was, as to those executors, dismissed by the referee upon the ground that facts sufficient to constitute a cause of action against them were not alleged. Their testator having only the relation of joint contractor with Brown, his death placed the primary liability upon the latter, unless he was unable to pay or insolvent. Upon that fact the liability of those personal representatives to the plaintiff upon the contract was dependent, and that fact was essential to the cause of action against them. Grant v. Shurtel, 1 Wend. 148; Trustees v. Lawrence, 11 Paige, 80; Laurence v. Trustees, 2 Denio, 577; Pope v. Cole, 55 N. Y. 124, 14 Am. Rep. 198; and cases there cited; Hauck v. Craighead, 67 N. Y. 432. It is not alleged. This defect was available by objection, which was taken at the trial. Code, § 499." The same doctrine is asserted in Bank v. Lenk (Sup.) 10 N. Y. Supp. 261, as follows: "The rule is well established that, where one of two or more joint debtors die, his personal representatives should not be joined in an action with the survivor, except upon the allegation of the insolvency of the survivors." Code Civ. Proc. § 758 has in no manner altered the rule stated. See, also, Merrill v. Blanchard, 7 App. Div. 167, 40 N. Y. Supp. 48. At common law the death of one of the joint promisors not only severs the joinder, but terminates the liability that belonged to the deceased, so that it cannot be enforced against his representatives. 1 Pars. Cont. (8th Ed.) 31. This rule, however, is changed by section 758 of the Code of Civil Procedure, which provides that where an action is pending the estate of a person jointly liable with others on a contract shall not be discharged on his death. Randall v. Sackett, 77 N. Y.

480. It would be incumbent, therefore, upon the appellant to exhaust his remedies against the survivors before proceeding against the estate of either one of them. In re Robinson, 40 App. Div. 23, 57 N. Y. Supp. 502. We are unable to coincide with the contention of plaintiff's counsel that the effect of section 758 was to modify the rule regarding the allegations of the complaint in actions against the representatives of deceased joint contractors; the less so, perhaps, as this question was considered by those courts whose opinions necessarily control us in arriving at our determination. In Barnes v. Brown, 130 N. Y. 373, 29 N. E. 760, in particular, the brief of counsel shows that section 758 was under consideration, while Bank v. Lenk (Sup.) 10 N. Y. Supp. 261, squarely states the enactment of that section has not obviated the necessity of such allegations.

The motion made at the close of the evidence for the dismissal of the complaint for failure to allege and prove sufficient facts to constitute a cause of action is granted. Judgment ordered accordingly, with costs.

Argued before PARKER, P. J., and SMITH, EDWARDS, CHASE, and HOUGHTON, JJ.

Cassius A. Phillips, for appellant.
Judson A. Gibson, for respondents.

PER CURIAM. Judgment unanimously affirmed, with costs, on opinion of referee in court below.

---

(69 App. Div. 273.)

LYTLE et al. v. CRAWFORD et al.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. WITNESSES—COMMUNICATIONS FROM ATTORNEY—EVIDENCE—QUESTION FOR JURY.

　　A defendant testified that he consulted certain lawyers at the instance of a third person. He then stated that he did so at his own instance. He later said he did so at the instance of an agent of plaintiff. He also stated that he was uncertain whether the agent referred him to the lawyers before or after the conversation with them, and finally said that it was before. Held, that it was for the jury to determine whether plaintiff's agent referred him to such lawyers.

2. ATTORNEY AND CLIENT—GENERAL RETAINER—POWER OF ATTORNEY.

　　An attorney under a general retainer to prosecute a claim against a person cannot, in the absence of a reference by his client of such person to him for information, bind his client by admissions or advice prejudicial to the client's cause of action.

3. TRIAL—DIRECTING VERDICT—EVIDENCE—SUFFICIENCY TO AUTHORIZE A CONTRARY FINDING.

　　In an action for money had and received, it appeared that plaintiff sold cotton to a third person, who gave his check on defendant. The purchaser delivered the warehouse receipts to defendant to meet the check. Defendant refused to pay the check in cash, and tendered certain notes against plaintiff. This was refused, and defendant was requested to return the check, and this was refused. Thereafter the purchaser gave plaintiff his duebill, and agreed to deliver the cotton receipts. The purchaser obtained the receipts, but did not deliver them to plaintiff, but instead procured a bill of lading for the shipment of the cotton, drawing his draft for payment upon the cotton, and delivered the bill of lading and draft to defendant, who afterwards received the proceeds. Defendant charged the check to the purchaser's account, and, after hearing of the subsequent transaction, credited the purchaser with a corresponding amount, and in effect canceled the check transaction. Defendant testified that an attorney told him that the check transaction was canceled, that the purchaser had given his duebill for the cotton, and that the check was of no value, and should be returned