JONES & BRINDISI, INC., Appellant, *v.* SAMUEL BRESLAW, as Executor of LOUIS KAPLAN, Deceased, et al., Respondents.

(Argued December 6, 1928; decided December 31, 1928.)

*Carroll Blakely Low* and *Walter Carroll Low* for appellant. The guaranty of Bernstein & Kaplan covered the renewal term in the lease provided. (*Houlihan* v. *Bolton's Sons*, 109 Misc. Rep. 325; *Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334; *Masset* v. *Ruh*, 235 N. Y. 462.)

*Henry W. Williams* for respondents. A guaranty of the rent due under a lease does not apply to a renewal pursuant to an option given in the lease. (*Knowles* v. *Cuddeback*, 19 Hun, 590; *Kanouse* v. *Wise*, 76 N. J. L. 423; *United States* v. *Bayly*, 39 App. [D. C.] 105; *Fasnacht* v. *Winkelman*, 21 La. Ann. 727; *Brewer* v. *Thorp*, 35 Ala. 9; *Gadsden* v. *Quackenbush*, 9 Rich. [S. C.] 222.) No reason existed for making Breslaw as executor of the deceased partner Kaplan, a party to this action and the complaint cannot be sustained as to him. (*Potts* v. *Baldwin*, 67 App. Div. 434; 173 N. Y. 335; *Seligman* v. *Friedlander*, 199 N. Y. 376; *Dennerlein* v.

*Martin*, 247 N. Y. 145; *Nickell* v. *Tracy*, 184 N. Y. 386; *Potter* v. *Merchants' Bank*, 28 N. Y. 641; *Hackley* v. *Draper*, 4 T. & C. 614; 60 N. Y. 88.) No authority was shown for Kaplan, who signed the guaranty for the firm of Bernstein & Kaplan, to bind Mrs. Bernstein and he had no implied authority, and the complaint cannot be sustained as to her. (*First National Bank* v. *Farson*, 226 N. Y. 218.)

CRANE, J. On the fifth day of April, 1919, Jones & Brindisi, Inc., a domestic corporation, leased to Abram Bernstein and Samuel Bernstein, a copartnership doing business under the name of Bernstein Bros., part of the second floor in a building known as No. 6 East Thirty-ninth street and 5 East Thirty-eighth street, in the borough of Manhattan, city of New York, " FOR THE TERM OF TWO YEARS (2 yrs.) and four months (4 mos.) to commence at noon on the first day of June, 1919, and to end at noon on the thirtieth day of September, 1921, at the yearly rent of THREE THOUSAND DOLLARS ($3,000)." The rent was payable in equal monthly payments in advance. The thirteenth clause of the lease read as follows:

" THIRTEENTH: It is further understood and agreed by and between the parties hereto that six (6) months before the termination of the present lease, the Landlord will give the tenant the option of renewing present lease for two (2) years upon the same terms and conditions and at the same rental."

Below the signatures on the lease was the following guaranty:

" We hereby guarantee the payment of the rent as stipulated in above lease.

" BERNSTEIN & KAPLAN,
" By L. KAPLAN."

On February 26, 1921, more than six months before the expiration of the term, the tenants exercised their option

and extended the lease for two years, as therein provided. In May of 1922 Bernstein Bros. vacated the premises and defaulted in their rent thereafter.

Executions issued on the judgments against Abram and Samuel Bernstein having been returned unsatisfied, this action has been commenced against Rose Bernstein and Louis Kaplan on the guaranty. Kaplan having died, his executor has been made defendant. The holding in the court below has been that the guaranty applied only to the first two years and four months, not to the extended term. This, we think, is contrary to the intention of the parties, as gathered from the surrounding circumstances and the wording of the instrument.

Abram Bernstein and Samuel Bernstein were sons of Rose Bernstein. Louis Kaplan was her brother. Bernstein and Kaplan were in the junk business in Glens Falls. Mrs. Bernstein left everything in the management of the business to her brother. " He was my brother and I left to him my business. I know nothing about it. Q. And you gave him permission to do anything that he thought proper? A. Yes. He was my brother. He did the whole business. I never went inside."

Bernstein Bros., composed of Abram and Samuel Bernstein, desired a lease of the premises in question on East Thirty-ninth street. They could not obtain it until the rent was guaranteed. When the lease was presented to the landlord for signature, it contained the guaranty of their mother and their uncle, that is, the firm of Bernstein & Kaplan, signed by Louis Kaplan. These guarantors were not strangers to the tenants; they were near relatives interested in their welfare. If the landlord required a guaranty of the rent payable by these young men for the period of two years and four months, it is reasonable to assume that the same security would continue for the full term of the lease, that is, the full period during which it, the landlord, was compelled by its agreement to permit the tenants to occupy the

premises. The tenants had the right, which they exercised, of leasing the premises for the full term of four years and two months. The landlord was bound for this period. Why should the guaranty cover only two years of it? The words of the guaranty express no such limitation. They are: " We hereby guarantee the payment of the rent as stipulated in above lease." The rent stipulated in the above lease was for four years and two months if the tenants exercised the privilege of extension. They exercised the option and became bound to pay the rent stipulated in the lease. There was no new lease; none was required; all the stipulations and agreements were contained in the one instrument which by the election of the tenant, continued for four years and two months. (*Masset* v. *Ruh*, 235 N. Y. 462; *Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334.) These business people knew what a renewal clause in a lease meant. Had they intended merely to be bound by a term of two years and four months or any other period less than the full term, the contract of guaranty would have so stated. It is evident they had nothing of this kind in mind. The young men going into business in New York and needing floor space, procured a lease, upon the mother and uncle guaranteeing the rent for the full term of the lease. This is what the parties intended to do; this is what they did do. Nothing in the guaranty indicates a different intention. On the contrary, it has this meaning.

The case of *Knowles* v. *Cuddeback* (19 Hun, 590) is cited as an authority in favor of the surety under similar facts. I say " similar " because the facts are not the same in one important detail. The tenant in that case failed to exercise his option thirty days before the expiration of the lease; he gave only three days' notice of election. It might have been held that the waiver by the landlord in consenting to this short notice was a release of the surety. No such point, however,

seems to have been made in the case, as the surety was held not liable on the ground that the renewal was a new lease. The court said: " The privilege of renewal is more like a buyer's option not uncommon in modern transactions, and it is generally understood that, if the option is availed of, a transfer or conveyance must be formally given to effect a consummation of the contract." And in distinguishing the case of *Decker* v. *Gaylord* (8 Hun, 110) the court said that in that case it appeared that the surety had waived the making of a new lease. The holding that the renewal is for a new contract or a new lease is contrary to what we decided in *Orr* v. *Doubleday, Page & Co.* (*supra*). We there said:

" The exercise by the defendant of the privilege of renewal extended the term of the lease for the additional period of ten years as a present demise for the full term of twenty years, the last half of which was to take effect at the termination of the first, at the option of defendant. A new lease for the additional years was not necessary. * * * The renewal did not evoke new conditions of continuance in occupation and a new lease would be useless. * * * Inasmuch as the defendant holds the premises for the full term of twenty years by virtue of the original lease, no question as to the application of the Statute of Frauds arises."

This distinction explains *U. S.* v. *Bayley* (39 App. [D. C.] 105). The cases of *Gadsden* v. *Quackenbush* (9 Richardson [S. C.], 222) and *Brewer* v. *Thorp* (35 Ala. 9) are not in point. The Supreme Court of New Jersey in *Kanouse* v. *Wise* (76 N. J. L. 423), on a demurrer to a declaration, held that the clause in a lease for one year, " with the privilege to renew this lease upon the same terms and conditions for a further period of four years," is an agreement that the lessor at the option of the lessee will make a new lease upon the same terms for a further period, and that while the execution of a written lease is not required if the tenant holds over, nevertheless,

it is, so far as the surety is concerned, a new lease. In the light·of our previous decisions, we cannot adopt this conclusion. *Fasnacht* v. *Winkelman* (21 La. Ann. 727) decides the point, but cites no authorities and gives no reasons other than the statement that the surety did not consent to the renewal.

From the evidence which we have quoted above, as given by Mrs. Bernstein, the finding is not justified that the guaranty made by Kaplan in the name of the partnership was authorized by Mrs. Bernstein. She appears to be insolvent, which justifies the bringing in as a party to this action the executor of the deceased partner, Louis Kaplan. (*Hoyt* v. *Bonnett*, 50 N. Y. 538, 545; *Potts* v. *Baldwin*, 67 App. Div. 434; affd., as *Potts* v. *Dounce*, 173 N. Y. 335.) The executor nevertheless is a proper party under any circumstances, as the guaranty was signed by Louis Kaplan, making him liable individually even if he had no authority to bind Rose Bernstein.

The order of the Appellate Division states that the reversal is upon questions of fact and of law. No question of fact is reversed. Finding IV of the trial court's decision reads as follows:

" IV. That plaintiff executed and delivered the agreement aforesaid in consideration of and upon the written agreement of the defendant, Rose Bernstein, and one Louis Kaplan, doing business as copartners under the firm name and style of Bernstein & Kaplan, then and there entered into by them with the plaintiff and duly executed and delivered in behalf of said firm by said Louis Kaplan guaranteeing the payment to plaintiff of the rent as stipulated in said agreement of lease."

This the Appellate Division changed to read:

" That the plaintiff executed and delivered the agreement aforesaid in consideration of and upon the written agreement of the defendant Rose Bernstein and one Louis Kaplan, doing business as copartners under the

firm name and style of Bernstein & Kaplan, subjoined to said lease, and reading: ' We hereby guarantee the payment of the rent as stipulated in above lease. Bernstein & Kaplan, By L. Kaplan.' "

This is not a reversal of a finding of fact; it is merely quoting the words of the lease, instead of stating their meaning. The change, if any, is in the finding of law or the conclusion of law to be drawn from the finding of fact made by the trial judge. In other words, the reversal here is purely upon questions of law. (*Goodman v. Marx*, 234 N. Y. 172, bottom of p. 174; *Rosenberg Bros. & Co.* v. *Buffum Co.*, 234 N. Y. 338, concluding paragraph, p. 344.) As we disagree with the Appellate Division in this conclusion of law, the judgment of the Appellate Division should be reversed in so far as it dismisses the complaint against the defendant Breslaw and the judgment of the Trial Term against said defendant should be affirmed, with costs in this court and in the Appellate Division. The judgment of the Appellate Division in so far as it dismisses the complaint against the defendant Bernstein should be affirmed, with costs.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.