BARBARA KUHLMAN, APPELLEE, v. WILLIAM J. LEMP BREWING COMPANY, APPELLANT.

FILED JUNE 10, 1910. No. 16,069.

1. **Landlord and Tenant: HOLDING OVER THE TERM.** Where a tenant under a written lease for one year, with the option of again leasing the premises for one or more years, holds over without exercising his option, his landlord may, if he so elects, consider him his tenant for another year, and thus render him liable for the payment of rent for that period at the rental fixed by the terms of the lease.

2. ———: ———: **TERMINATION OF TENANCY.** Where, in such a case, and while holding over, the tenant claims the right to terminate his tenancy at any time, under conditions expressed in the lease, ...lege and prove the existence of the conditions and his ... ...with, in order to escape the legal consequences of ...g over ...e term.

...PEAL from the district court for Otoe county: ...VEY D. TRAVIS, JUDGE. *Affirmed.*

*H. C. Brome* and *Clinton Brome,* for appellant.

*D. W. Livingston* and *George H. Heinke, contra.*

BARNES, J.

Action in the district court for Otoe county to recover rent alleged to be due for the use of certain premises situated in the city of Auburn in said county. The plaintiff had the verdict and judgment, and the defendant has appealed.

It appears that there was a written lease between the parties by which the defendant rented from the plaintiff the premises in question from the 1st day of May, 1906, to the 1st day of May, 1907, at $50 a month, payable monthly in advance. The lease in question also contained the following provision: "It is further hereby expressly agreed by and between the parties hereto that the said William J. Lemp Brewing Company is to have the option of leasing said premises upon the same terms as embodied in this lease after the expiration of the term herein granted for the further period of three years, making a total term of four years, provided, however, that in case the city of Auburn shall prohibit the sale of intoxicating liquors within its borders, or pass obnoxious laws or ordinances forcing the keepers of saloons for the sale of intoxicating liquors to close their places of business, or render such business so unprofitable as to compel them to quit business, then the said William J. Lemp Brewing Company may upon reasonable notice terminate the tenancy under this contract, and cancel and annul this lease."

It further appears that the defendant took possession of the building situated on the premises described in the lease, and from the 4th day of May, 1906, until the 4th day of May, 1907, conducted a saloon, either by itself or others, for the sale of intoxicating liquors therein; that some time in April, 1907, it informed the plaintiff that if a license to sell intoxicating liquors could not be procured it would not exercise its option to again lease the premises as provided by the terms of its existing lease, and there is no claim that it exercised such option. It also appears that two attempts were made to procure a license, which were not

successful, on account of personal objections to the applicant; and that, pending the proceeding therefor, the defendant occupied the premises with its stock and fixtures until about the middle of June, 1907; that on the 29th day of that month defendant delivered the key to the building to one Butts, an employee of the plaintiff's husband. There is no evidence in the record showing or tending to show that the city of Auburn prohibited the sale of intoxicating liquors within its borders, or passed obnoxious laws or ordinances forcing the keepers of saloons for the sale of intoxicating liquors to close their places of business, or render such business so unprofitable as to compel them to quit the business, and that defendant gave no notice to the plaintiff of its intention to terminate the lease other than that above mentioned.

At the close of the evidence the court instructed the jury, among other things, as follows: Instruction No. 5. "You are instructed that where a tenant with the consent of his landlord, express or implied, holds over his term, the law presumes a continuation of the original tenancy for a like term and upon the same conditions, and you are instructed that the first term mentioned in the lease was one year, and if you find from the evidence that the defendant held over his term, that is, stayed in possession until May 5, 1907, or the 29th day of June, 1907, either with the express consent of the plaintiff Barbara Kuhlman or by her implied consent, then you are instructed that the defendant would be liable for rent at the rate of $50 a month for the year ending May 1, 1908. You are instructed in this case that there is no evidence in this case that the city of Auburn prohibited the sale of intoxicating liquors in said city, or passed laws forcing saloons to close their places of business, or to render their business unprofitable."

Defendant strenuously contends that the giving of this instruction was reversible error, and argues that by holding over from May 4, 1907, to about the middle of June of that year, it became at most only a tenant at will, and

could thereafter terminate the lease at any time it desired to do so. To this contention we cannot give our assent. It may be said that upon this question there is a division of the authorities, but this court is fairly committed to the rule that where a tenant under a written lease for one year, with the option of renewal, or of again leasing the premises for one or more years, holds over without exercising his option, the landlord may, if he so desires, consider him a tenant for another year, and liable for the rent for that period at the rate fixed by the terms of the lease. *Bradley v. Slater,* 50 Neb. 682; *Critchfield v. Remaley,* 21 Neb. 178; *Yates v. Kinney,* 19 Neb. 275; *Thiebaud v. First Nat. Bank,* 42 Ind. 212.

In *Haynes v. Aldrich,* 28 Am. St. Rep. 636 (133 N. Y. 287) it was said: "From tenant's holding over after the expiration of his term, the law implies an agreement to hold for a year upon the terms of the prior lease. The option to so regard it is with the landlord, and not with the tenant, and the latter holds over at his peril." In that case the holding over was for the period of two days, which occurred by reason of difficulty on the part of the lessee to procure trucks with which to move, and also from the illness of a boarder; and it was held that this would not prevent the holding over from operating as a renewal of the lease for another year if the landlord so elected to treat it, and it was said: "Lessor's election to treat a holding over as a renewal of the lease for another year, having been manifested in direct and unequivocal language, is not avoided by evidence that he subsequently visited the premises, and, finding them deserted by his tenant, had some repairs attended to, and tried in vain to rent them to another tenant." Indeed, without citing further authorities, we may safely say that the rule adopted by this court is sustained by the great weight of authority in this country.

Defendant has cited some cases to the contrary, among which are *Andrews v. Marshall Creamery Co.,* 118 Ia. 595, and *Spangler v. Rogers,* 123 Ia. 724. It appears, however,

that those cases were governed by section 2991 of the Iowa code, which provides that a tenant holding over a specified term becomes a tenant at will, and that the tenancy may be terminated upon giving thirty days' notice, and therefore do not sustain the defendant's contention.

Finally, defendant contends that the provision contained in the lease which is quoted above gave it the option of terminating the tenancy at any time upon the happening of certain events and the giving of reasonable notice, and therefore it could not be held for the payment of rent after May 1, 1907. It must be observed, however, that there is no evidence in the record that the events upon which the right to cancel the lease depended ever occurred, or that reasonable notice was given to the plaintiff of the defendant's intention to terminate its tenancy, and therefore the district court did not err in giving the instruction complained of.

Finding no error in the record, the judgment of the district court is

AFFIRMED.