CRENSHAW-GARY LUMBER Co. *v.* NORTON *et al.*

[72 South. 140.]

1. LANDLORD AND TENANT. *Construction of lease. Extension or renewal.*

In construing a lease to determine whether it is a lease with an "option of renewal," such as requires notice of the intent of the lessee to renew before its expiration or whether it is a lease with

an "option of extension," which does not require such notice
and where notice of renewal or extension will be implied by the
tenant remaining in possession of the premises after the ex-
piration of the lease unless provided otherwise in the lease, the
court will consider the entire instrument, together with the other
facts alleged in the bill.

2. LANDLORD AND TENANT. *Removal of lease. Notice. Option of re-*
   *newal. Option of extension.*

   While the authorities are divided as to whether or not notice of
   intent to renew is required of the lessee where it is a lease with
   an option of renewal and notice is not provided for in the con-
   tract, but it is probably the better rule to hold that the lessee
   is required to give notice of his intent to renew before the ex-
   piration, regardless of any provision in the contract as to notice
   where it is clearly the intention of the parties that a new lease
   at the expiration of the old, is to be obtained by the lessee, and
   not that the option is one merely of extension of the term of the
   old lease.

3. SAME.

   The margin of difference is very narrow between the two kinds
   of "options of renewal" and, "option of extension," and it may be
   reasonably said that there is no substantial difference and the
   terms are synonymous, although a clear distinction is made by
   the authorities in this country.

4. LANDLORD AND TENANT. *Renewal of lease. Notice.*

   Where a lumber company leased land for its mill for seven years
   the lease providing that at the expiration of the term, the
   lessee should have the option to renew said lease "for an addi-
   tional term of seven years, and prior to the expiration of the
   original term the company acquired timber lands about its plant
   sufficient to furnish material for its operations for several ad-
   ditional years, it was not required to give specific notice to the
   the lessor of its intention to renew, as no new lease was in-
   tended, and remaining in possession after the expiration of the
   original term was sufficient notice and extended the lease.

5. COVENANTS RUNNING WITH LAND. *Covenant to renew or extend the*
   *lease.*

   A lessor's covenant to renew or extend the lease for a like term
   runs with the land and can be availed of by the lessee's as-
   signee as a matter of law.

111 Miss.—46

APPEAL from the chancery court of Sharkey county. HON. E. N. THOMAS, Chancellor.

Suit by Crenshaw-Gary Lumber Company against W. G. Norton and others. From a decree for defendants, complainant appeals.

The facts are fully stated in the opinion of the court.

*Watson & Jayne,* for appellant.

*Percy & Percy,* for appellees.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Sharkey county, Miss., sustaining a demurrer to the bill of complaint, and dismissing the bill, and denying leave to complainant to file certain alleged amendments to the bill.

The original bill in this case was filed by the Crenshaw-Gary Lumber Company, a corporation, against W. G. Norton and the Richey Land, Improvement & Manufacturing Company, and the facts upon which this suit is predicated are as follows:

On the 18th day of October, 1907, the Richey Land, Improvement & Manufacturing Company, a corporation, leased to the Norton Lumber Company, a corporation, a certain tract of land containing fourteen acres, for a period of seven years, which lease, among other things, contained the following provisions:

"(5) It is further covenanted and agreed between said lessor and said lessee, that at the expiration of said term, the said lessee, their heirs, personal representatives or assigns, shall have the option to renew said lease for the additional term of seven years, for the same rental consideration and covenant hereinabove specified.

"(6) It is further covenanted and agreed between the said lessor and the said lessee, that the said lessees,

their heirs, personal representatives or assigns, shall
have the option at any time during said lease, or at any
time during the fourteen years, should said lease be
renewed at the expiration of the present term, as here-
inabove provided for, to purchase said land hereinabove
described, at a price not to exceed one hundred dollars
per acre.''

By successive conveyances, to wit, by deed from the
Norton Hardwood Company, a corporation, successor
to the Norton Lumber Company, to John C. Adams, trus-
tee, (2) by deed dated October 25, 1912, from the Nor-
ton Hardwood Company, W. G. Norton, John C. Adams,
trustees, and the Bank of Commerce & Trust Company
of Memphis, Tenn., to W. L. Crenshaw and F. E. Gary,
and by deed dated December 14, 1912, from W. L. Cren-
shaw and F. E. Gary to the Crenshaw-Gary Lumber
Company, a corporation, the said Crenshaw-Gary Lum-
ber Company became vested with all rights in and to
the lease hereinabove mentioned, originally vested in
the Norton Lumber Company.

The lease, and the options granted thereby, having
expired on the 18th day of October, 1914, W. G. Nor-
ton, by deed bearing date the blank day of October,
1914, but acknowledged the 24th day of October, 1914,
acquired the fee from the Richey Land, Improvement
& Manufacturing Company.

In November, 1914, the complainant, the Crenshaw-
Gary Lumber Company, a corporation, filed its bill
in the chancery court of Sharkey county, in which it
set up the above conveyances, and alleged that the
complainant ''became and were and are entitled to all
of the rights, equities, users, occupation, right of re-
newal and option of purchase provided for in said
leasehold contract''; that it (the complainant) was
using said leasehold as a sawmill site; and that the
defendants W. G. Norton and the Richey Land, Im-
provement & Manufacturing Company, were aware of
this fact, and also aware of the fact that the appellant

"was going forward under the terms of said lease-hold contract, living up to and abiding by the same—all of which was fully known to the said W. G. Norton and the Richey Land, Improvement & Manufacturing Company."

The prayer of the bill was that the conveyance from the Richey Land Company to W. G. Norton be set aside, and that complainant be decreed to be entitled to continue to occupy and use said mill site unto the end of the fourteen-year period, with the right in complainant at any time during said period to avail of said option of purchase, or, if mistaken in the relief sought, then that W. G. Norton be decreed to make over and convey title to said mill site upon the payment of one thousand, four hundred dollars.

In other words, complainant, by its bill, sought to have the court of equity decree specific performance of the lease contract and enforce one or the other of the options granted in it, after the time named in the lease contract for the exercise of such options had expired, basing its right upon the grounds that by occupying the leased premises after the expiration of the term it had by such occupation availed itself of the option of renewal; and that defendants were charged with notice of the intent of complainant to renew the lease for the remaining seven years.

To this bill, the defendants, appellees here, filed the following demurrer:

"Now comes the defendants in the above-styled suit, namely, W. G. Norton and the Richey Land, Improvement & Manufacturing Company, and demur to the bill of complaint filed herein, and for grounds of demurrer would show:

"(1) There is no equity on the face of the bill.

"(2) That it appears from the allegations of the bill and Exhibit A, filed therewith, that complainants' right to renew the lease under paragraph 5 of Exhibit A expired with said lease, and same was not renewed

before or at the time of the expiration of the said lease, and complainants had no right of renewal at the date of the filing of their bill of complaint herein.

(3) It appears from the allegations of the bill of complaint and Exhibit A filed therewith that complainant had the option at any time during the seven-year lease, or during the fourteen years if said lease had been renewed, to purchase the land described in the lease at a price not exceeding one hundred dollars an acre; that the lease was not renewed by complainants, and no offer to purchase said land made during the life of the original lease; and that no right to so purchase said land existed at the time of the filing of the bill herein.

"(4) Because it appears from the bill and the exhibits filed therewith that complainants had, at the time of the filing of the bill herein, no right either to lease or to purchase the property described in Exhibit A to the bill.

"(5) And for other grounds to be assigned at the hearing of this demurrer."

After hearing the argument of counsel the court below thereupon entered the following decree:

"This cause coming on to be heard on the demurrer filed by the defendants in the above-styled cause to the bill of complaint filed herein, and the court having heard the argument of counsel, it is ordered that the demurrer be and the same is sustained, and the complainants making application for leave to amend the bill, by consent of counsel for complainants and defendants, it is agreed that the amended bill should be submitted to the court, in order that the court might pass upon the filing of it, between now and the 20th day of February, 1915, and any decree to be rendered to be as of this term of the Sharkey county court, and by consent to be entered on the minutes as of this term."

The complainant thereafter submitted to the court a paper labeled, "Amendment to Bill of Complaint,"

wherein it was charged that at the time of the negotia-
tions whereby and through which complainant's immedi-
ate vendors, W. L. Crenshaw and F. E. Gary, pur-
chased from the Norton Hardwood Company and W.
G. Norton, and others, the leasehold and the other
property described in Exhibit C to the original bill of·
complaint, the vendors in that instrument represented
to W. L. Crenshaw and F. E. Gary, as an inducement
for them to purchase the said property, and they (the
said W. L. Crenshaw and F. E. Gary) were led to be-
lieve, in said transaction, either by intention on the
part of the vendors or by mistake on their part, that
the expiration date of the first part of said contract was
November 18, 1914, instead of October 18, 1914; "that
the representations aforesaid with reference to the
expiration of the first seven-year period of the lease
expiring on November 18, 1914, were made by the said
W. G. Norton to the said Crenshaw and Gary, his
vendees in Exhibit C, which representations they relied
on and accepted as being true and acted thereon; that
the said Crenshaw and Gary in making said purchase of
said W. G. Norton and the other vendors through
Exhibit C were not shown and did not know of the
true date of said lease Exhibit A, or of the expiration
thereof, but were only shown what purported to be
an abstract of the conditions of that lease or convey-
ance; that such also is true of these complainants in
their purchase from the said Crenshaw and Gary,
through Exhibit D to the original bill of complaint, it,
the complainant, having only this data to go upon
and having never seen the original lease, Exhibit A,
and relying upon the statements aforesaid, as com-
ing from the said W. G. Norton and through a purported
abstract of the contents of said Exhibit A, made their
purchase from the said Crenshaw and Gary through
Exhibit D."

The bill further alleged that:

The "expiration day of said lease fell on Sunday the 18th day of October, 1914, and that the said W. G. Norton appeared in Greenville on Tuesday, the 20th day of October, 1914, to begin his scheme whereby he was to put in motion his efforts to take from complainant said mill site and said milling plant; that he had gone to Greenville, Miss., from his home in Arkansas for that purpose, evincing thereby that he had this very object and purpose in mind."

The purported amendment also alleged that Norton had begun an action of ejectment in the circuit court of Sharkey county, and sought in that action to recover rents, etc., and, adopting the prayer of the original bill, further prayed that the Norton Hardwood Company be made a party to the suit, and that Norton be enjoined from further prosecuting his action of ejectment.

There is nowhere alleged in the purported amendment, or by motion filed therewith, any statement of excuse or reason why the matters and facts set up therein were not included in the original bill; and realizing this, after the same had been submitted to the court, the attorneys for complainant, after a ruling by the chancellor that he would not permit the filing of the purported amendment, then asked to be allowed to file "an amendment to the amendment," in which they set up that at the time of the filing of the original bill the facts alleged in the purported amendment were not known to the attorneys for the complainant, not that they were not known to the complainant, but that they were not known to the attorneys for the complainant, and further that such facts were not known to the attorneys when the demurrer was set down for hearing (not when the demurrer was argued).

The amended bill vaguely charges fraud, collusion, and deception upon the part of defendants.

The court thereupon entered a decree refusing complainant permission to file the purported amendment and the amendment thereto, and dismissing the bill of com-

plaint; and from this decree the complainant prosecutes an appeal.

The appellee Richey Land, Improvement & Manufacturing Company, defendant below, leased through appellee, W. G. Norton and others to the appellant, Crenshaw-Gary Lumber Company, the fourteen acres of land here involved, upon which appellant's mill and other valuable holdings are located. The lease was for a term of seven years from October 18, 1907, with an option of renewal by the lessee for seven years longer, and also an option to purchase the land for one thousand, four hundred dollars. The appellant had been operating a general milling business of the kind and character provided in the lease upon this land, and had its mill site and milling plant located thereon, together with other buildings and improvements, all of which were of the value of twenty thousand dollars. Appellant had also acquired large holdings of standing timber near to and accessible to its plant that would provide a cut of lumber for the mill for several years after October 18, 1914, at which time the first seven years of the lease and option would expire. It is further shown that, from all appearances to the most casual observer, the intent of appellant milling company to occupy the land for several years after October 18, 1914, was obvious. In this situation, appellee Norton, in November, 1914, filed a suit to eject appellant from this land, Norton claiming that he had purchased the land for one thousand, four hundred dollars from the Richey Company about November 24, 1914; whereupon, appellant, in November, 1914, filed its bill praying that appellee Norton be restrained in his ejectment suit, for the reasons set out above in the statement of facts. A demurrer to this bill was sustained by the lower court, on the ground that the option of appellant to renew or extend the lease had expired October 18, 1914, and that the lease had not been renewed or extended by appellant as provided for by the option of renewal in the lease. We think

that a true and correct construction of this lease is the principal question in this controversy.

In construing the lease to determine whether it is a lease with an "option of renewal," such as requires notice of the intent of the lessee to renew before its expiration, or whether it is a lease with an "option of extension," which does not require such notice and where notice of renewal or extension will be implied by the tenant remaining in possession of the premises after the expiration of the lease unless provided otherwise in the lease, we shall consider the entire instrument, together with the other facts and circumstances alleged in the bill. In sections 5 and 6 of the lease, the word "renew" is used; while in sections 3 and 4, "or extension thereof" and "or life or extension thereof should said lease be extended as hereinafter provided for," these terms appear: The language employed in the instrument, when considered as a whole, leaves it somewhat doubtful as to whether it is a lease with an "option of renewal" or an "option of extension." It seems that the authorities are divided as to whether or not notice of intent to renew is required of the lessee where it is a lease with an option of renewal and notice is not provided for in the contract. But it is probably the better rule to hold that the lessee is required to give notice of his intent to renew before the expiration, regardless of any provision in the contract as to notice, where it is clearly the intention of the parties that a new lease at the expiration of the old is to be obtained by the lessee, and not that the option is one merely of extension of the term of the old lease. The margin of difference is very narrow between the two kinds of options, "option of renewal," and "option of extension;" and it may be reasonably said that there is no substantial difference, and the terms are synonymous, although a clear distinction is made by the authorities in the United States. But if we follow the rule announced by a majority of the courts—that is, that in contracts of

lease with the "option of renewal" notice by the lessee
of intent to renew before expiration is required—and
if we hold that the lease here is that character of con-
tract, the question arises under the pleadings as to
whether or not, from the particular facts and circum-
stances in this case, the appellees had substantial or
constructive notice of the intent of the lessee (appel-
lant) to renew the lease before the expiration of the
term. It is conceded in the very able brief of appellees
(by Percy & Percy) that, if the appellant "affirmatively
indicated a desire or election to avail itself of the op-
tion to renew," then this would be sufficient notice for
a renewal or extension of the lease. *Andrews* v. *Mar-
shall Creamery Co.,* 118 Iowa, 595, 92 N. W. 706, 60 L.
R. A. 399, 96 Am. St. Rep. 412.

The bill alleges notice by the tenant remaining in
possesion of the premises. It. also alleges notice in
other ways. But a majority of the courts seem to hold
that the tenant remaining in possession is not notice
of renewal under the option, when the contract of lease
and option contemplates a new lease, and not an ex-
tension of the old one. The bills here also charged that,
in the very nature of the business carried on by the
milling plant, the recent building and valuable improve-
ments placed on the lands, as well as the acquisition of
the standing timber accessible to the mill, all of these
facts and circumstances being well known to the ap-
pellees, was substantial notice of the intent of the
lessee to renew the lease before its expiration. The bill
also alleges that appellant was fraudulently deceived by
appellee Norton, from whom it had obtained the lease-
hold, as to the date of the expiration of the lease, and
that therefore, Norton is estopped in equity from taking
advantage of his own wrong.

Taking the written lease and considering it as a whole,
and also taking into consideration, in connection there-
with, the particular facts and circumstances in this
case, admitted to be true as alleged in the bill, we

think the chancellor erred in sustaining the demurrer to the bill and in refusing to permit the appellant to file its amended bill.    Furthermore, in 2 Underhill on Landlord and Tenant, section 803, p. 1362, the author says:

"In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease.    The lease must clearly and positively show that the making of a new lease was intended.    This must appear from the express language of the parties.    The reason for the presumption is the fact that the making of a new lease will involve trouble and expense, which should be avoided by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur such trouble and expense.    For if the new lease, as is always the case, when executed, is but a substitute for a re-execution of the old lease, it is in no wise more efficacious or obligatory, nor does it confer any greater rights than the latter.    Hence a court of equity will not direct the performance of a useless ceremony, but will regard the language of such leases, as conferring a vested interest in the lessee at their execution with an option in him to continue or determine that interest at some future date.    In all cases where the language of the lease, viewed in connection with the circumstances of the case it is clear than an execution of a new lease was not the intention of the parties, but that the provision was for an extension, the continuing in possession of the lessee after the lease has expired without notice to the landlord, unless notice is expressly required, is an extension of the lease and operates to continue the relation of the landlord and tenant."

The foregoing text is well supported by the decisions. 2 Underhill, p. 1377, section 809.    Says the author:

"Where a lease conferring an option to renew omits to provide that he shall notify the lessor of his election to renew, a notice from him to his lessor of his intention to renew is not required. In such a case the lessee's merely remaining in possession after the term has expired is an exercise of the option to renew and binds both him and his lessor for a new term."

The covenant to renew or extend the lease in the case at bar ran with the land, and could be availed of by the assignee of the lessee as a matter of law. However, this right was carried into the face of the lease. This provision could also be enforced against the lessor or his assigns or grantees. Therefore appellee Norton having notice both actual and constructive of the provisions of the lease, and actual notice of the intention and purpose of appellant to avail of the extension covenant therein, the same is enforceable against him.

2 Underhill on Landlord and Tenant, p. 1391, section 815. Says this author:

"The right of a lessee under a covenant to renew his lease at its expiration is a substantial and important part of the term itself; and, as it relates to the premises themselves, it is transferred with the term by an assignment of the lessee's interest and as incident thereof. In other words, the covenant to renew is said to run with the land and may operate in favor of the assignee, mortgagee, pledgee of the lessee, though the word assigns is not mentioned in it. The assignee may therefore enforce the covenant against the lessor or he may enforce it against a grantee of the lessor."

We think the law as announced above is sound, and we adopt it as applicable to the instant case. The authorities differ on the subject, but we find that a majority of the decisions are not in conflict with the above text, but support it. In *Kuhlman* v. *Lemp Brewing Co.,* 87 Neb. 72, 126 N. W. 1083, 29 L. R. A. (N. S.) 174, the subject is discussed at length and numerous authorities

are there cited.  The case of *Hamby* v. *Georgia Iron Co.,* 127 Ga. 792, 56 S. E. 1033, is in point.  We hold that the written lease here was not intended to be one of, renewal, as no new arrangement was contemplated by the parties no new lease was intended to be executed, but merely an extension of the original term under the old lease was contemplated and intended by the parties to the contract.  Therefore notice by the lessee of intent to extend (or renew) the lease was not necessary; remaining in possession of the premises after the expiration of the lease was sufficient notice, and extended the lease for seven years longer.  *Andrews* v. *Marshall Creamery Co., supra; Hamby* v. *Georgia Iron Co., supra.*

We do not pass upon the question of estoppel on account of the alleged fraud and deception of appellees, as it is unnecessary to do so at this time; but we conclude, from this record, that the position of appellees in this case should be scrutinized carefully in a court of equity and good conscience.

The decree sustaining the demurrer is reversed, and appellees allowed sixty days in which to plead after mandate filed in the lower court.

*Reversed and remanded.*