## BRIDGES et al. v. LAHMAN.

No. 17375—Opinion Filed Jan. 4, 1927.

Rehearing Denied May 3, 1927.

1. **Contracts—Separable Contracts—Executed and Executory Agreements—Independent Considerations.**

Where parties enter into a written contract which contains two distinct agreements, each relating to different duties and obligations, and each supported by a different consideration, and one of such agreements is fully executed, while the other is wholly executory, such contract is separable and not an entirety, and for the breach of a covenant common to both agreements by one of the parties to the contract an action will lie under the executed agreement though the executory agreement has wholly failed to be carried out by either party.

2. **Frauds, Statute of—Inapplicability to Separable Executed Agreement Relating to Real Estate.**

In such case, where the fully executed agreement between the parties relates to the leasing and occupancy of certain premises for a term of six months, to the sale of certain growing crops thereon, and to the making of certain repairs on the dwelling thereon situated, none of the provisions of the statute of frauds has any application to the enforcement of a remedy for breach of the covenant.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; A. C. Brewster, Judge.

Action by H. E. Bridges et al. against C. E. Lahman to recover damages for breach of contract. Demurrer to plaintiffs' evidence sustained and judgment for defendant. from which plaintiffs bring error. Reversed in part with directions.

This action was commenced April 8, 1924, by plaintiffs filing their petition in the district court of Tulsa county against the defendant, said petition alleging two causes of action.

In the first cause of action it was alleged in substance, that defendant went into the possession of certain premises therein described under a written contract, by the terms of which contract defendant promised and agreed to restore the possession of said premises to plaintiffs at the expiration of said contract in as good condition, reasonable wear and tear excepted, as they were in when he took possession thereof; that defendant vacated said premises on or about January 1, 1924, and that he breached the foregoing covenant to plaintiffs' damage; the petition set forth in detail the things done and omitted to be done by defendant which constituted a breach of this covenant; and prayed for damages. Plaintiffs' second cause of action alleged a breach of said written contract in that defendant refused to carry out the terms of said contract for the period of three years after January 1, 1924, as provided for in said contract.

Defendant answered by general denial and upon the issues framed by the petition and answer the cause was tried to the court without the intervention of a jury on November 4, 1925. At the conclusion of plaintiffs' evidence defendant interposed a demurrer thereto, which was sustained by the court and judgment entered in favor of the defendant and dismissing plaintiffs' action. After unsuccessful motion for new trial, plaintiffs have brought the case here by petition in error with case-made attached for review.

Linn & Spradling, for plaintiffs in error.

O'Meara & Silverman, for defendant in error.

Opinion by LOGSDON, C. Only the first assignment of error is presented and relied on by plaintiffs in their brief, that being that the court erred in sustaining defendant's demurrer to plaintiffs' evidence. It is considered that this assignment is well taken as to the evidence in support of the first cause of action.

Plaintiffs' first cause of action was based upon a breach by defendant of the following obligatory covenant of an express written contract:

"Party of the second part hereby agrees and binds himself to accept said premises as per contract and agreement and agrees to return same to party of the first part at the expiration of this contract in as good condition as when received, natural wear and tear excepted."

On June 18, 1923, plaintiff H. E. Bridges and defendant, C. E. Lahman, entered into a written contract by which Bridges leased to Lahman certain farming lands described in the contract, title to which now appears to have been in Mrs. Bridges, together with one 15-acre tract and a 50-acre tract, near

or adjacent thereto, but separately enclosed on both of which tracts Bridges held leases. Under this contract Lahman was to have immediate possession of the premises, together with the growing crops thereon, and agreed to pay the sum of $1,100 for the crops and the use of the premises during the remainder of that calendar year. The other material portion of the contract reads:

"Party of the second part upon the signing of said contract agrees to pay for the balance of the year 1923, as per contract referred to hereinbefore, the sum of $600 cash in hand, and agrees to pay $100 on the first day of August, 1923, and $100 on the first day of each month thereafter until the total sum of $1,100 has been paid. And said first party agrees to make extension and second party hereby accepts of said lease to the party of the second part covering all of the hereinbefore described property for a period of three years beginning January 1, 1924, for a consideration of $1,500 per year, payable as follows: $500 on the 1st day of January of each year, $500 on the 1st day of May of each year, and $500 on the 1st day of September of each year during the three-year period of renewal lease. It is further and especially agreed that the party of the first part shall exercise, and agree to control the parties now living on, or any parties who may hereafter move thereon, a certain tract of acreage known as the 50-acre lease adjoining the land hereinbefore described in and to their making any objection to the use and purpose for which the party of the second part shall use said premises under the life of this lease."

This contract is clearly separable and contains two distinct and separate agreements, each resting upon a different consideration. That portion of the contract relating to the remainder of the year 1923, and including a sale of the growing crops, was based upon a consideration of $1,100, and was a fully executed contract prior to January 1, 1924. (Comp. Stat. 1921, sec. 5064.) That portion of the contract relating to a 3-year extension of the lease from and after January 1, 1924, was wholly executory as to both parties, and rested upon an executory consideration of $1,500 for each of the three years. Neither agreement depended upon the performance of the other, and the consideration for one was no part of the consideration for the other. Elliott on Contracts, sec. 1543; Davidson v. Gaskill, 32 Okla. 40, 121 Pac. 649.

Defendant removed from the premises on or about January 1, 1924, and refused to carry out the terms of the executory agreement intended to cover the three succeeding years. Plaintiffs' first cause of action was based upon defendant's occupancy and use of the premises during 1923 under the executed agreement, and alleged a breach of the obligatory covenant to return the premises "in as good condition as when received, natural wear and tear excepted." The allegations of plaintiffs' first cause of action stating how this condition was breached reads:

"* * * And that said defendant has violated said provision of said contract, in that during the time said defendant had possession of said premises described in Exhibit A hereto attached, he hauled and caused to be hauled out and emptied in, on and about said premises, garbage which contained therein cans, buckets, glass, jars, broken glass and containers of various sizes and descriptions, and that at the time he abandoned said premises as herein alleged, said cans, buckets, glass, jars, broken glass and containers of various sizes and descriptions were left scattered in, on and about said premises, and said defendant caused and permitted the barn doors on the barn located on said premises and the partition walls of the stalls therein and planks on said barn and stalls and the doors and planks on other buildings and improvements on said premises to be torn off and destroyed, and said defendant caused and permitted the corrals and fences on said lands to be wrecked and broken down, and said defendant did haul or caused to be hauled and piled on said premises an immense pile of rock and stone, and said defendant did cause and permit dead swine or hogs to lay exposed on said premises and at the time said premises were so abandoned by the defendant said cans, buckets, glass jars broken glass and containers were left by the defendant scattered in, on and about said premises, and the barn doors and the partition walls of the stalls therein and the plank on said barn and stalls and the doors and planks on other buildings and improvements on said lands were not hung or replaced by the defendant, and the corrals and fences were not rebuilt or repaired, and said immense pile of rock and stone were not removed, and the dead swine or hogs were left on and not removed from said premises or buried by the said defendant; that at the time the said defendant took possession of said lands and buildings, improvements and appurtenances thereunto belonging, said lands and the surface thereof was clear and without any cans, buckets, glass, jars, broken glass and containers, and the improvements, buildings and appurtenances thereunto belonging were in good repair and in first class condition, and that said lands were free of dead swine or hogs."

The testimony of plaintiffs' witnesses fully sustained these allegations. While it is not disclosed by the record of the trial upon what ground the trial court based its action

in sustaining the demurrer to the evidence under the first cause of action, it is made clear in the briefs of the parties that the court acted upon the theory that the contract was entire and indivisible; that because the agency of H. E. Bridges for the leasing of his wife's land was not in writing the contract is unenforceable under the fifth subdivision of our statute of frauds, and that because the lands covered by the two leases which H. E. Bridges held, and which were included in the contract between these parties, were not described by metes and bounds in the written contract here involved their description is insufficient under the statute of frauds. At page 41 of plaintiffs' brief appears this language:

"Defendant invoked the statute of frauds when same were not applicable as he himself had signed the agreement and no occasion for the application thereof arose."

At page 54 of defendant's brief he says:

"The trial judge may have construed our objections as being placed upon the lack of agency under the statute of frauds but his decision on the demurrer was absolutely correct regardless of his reasoning. We want this court to understand now that in view of the lack of unanimity in the authorities we are conceding that the lack of written authority in the agent to make the contracts under the statute of frauds is not material here and we are invoking the statute of frauds solely on account of the insufficiency of the description of the land."

Plaintiffs' first cause of action arose by reason of the alleged breach of an agreement between the parties for the lease and occupancy of premises for a period of less than one year, which agreement was separable and distinct from the agreement relating to the 3-year extension, covered additional and distinct subject-matters, viz., growing crops, and rested upon a different and independent consideration. This agreement was fully executed by both parties prior to defendant's alleged breach of obligatory covenant above quoted. None of the provisions of the statute of frauds has any application to plaintiffs' first cause of action. It was, therefore, reversible error for the trial court to sustain defendant's demurrer to plaintiffs' evidence under the first cause of action.

Plaintiffs' second cause of action is based upon defendant's alleged breach of the executory agreement to accept a renewal or extension of the 1923 lease for an additional period of three years beginning January 1, 1924, for an annual consideration of $1,500. The lease agreement between the parties for the year 1923 included within its terms the purchase price of certain growing crops and the expense of repainting, reroofing, and otherwise repairing the residence upon the leased premises. Obviously these terms of the 1923 lease agreement would not be included in a renewal or extension lease for the succeeding 3-year period under the executory agreement between the parties. It was therefore necessary that a renewal or extension lease containing terms satisfactory to both parties be tendered and accepted before the executory consideration named in the instant contract for the 3-year period became a binding promise on the part of defendant. No such tender was pleaded by plaintiff or shown by the evidence.

Mrs. Bridges, as a witness for plaintiffs, testified that when one of the installments under the 1923 agreement was due she collected it herself from Lahman to meet certain bills, her husband being then away from home. She didn't state which of the five installments this was. On cross-examination she testfied:

"Q. He did make the check payable to you? A. In a few days he came to the house and gave me a check. Q. You also told him you wanted a new contract the first of the year? A. Mr. Lahman told me the contract wasn't binding on either party and I said, 'Well, if it isn't, Mr. Bridges can make a new one.' Q. Didn't you tell him you wanted a new contract the first of the year? A. No, sir."

Plaintiffs were thus advised prior to the expiration of the 1923 agreement that defendant did not consider the executory agreement binding as a renewal or extension of the 1923 agreement, and that one containing new and different terms would have to be made. It is clearly evident from the language of the entire contract and from the conduct of the parties after signing it that their minds did not meet and that there was no mutual understanding as to the terms and conditions upon which the executory agreement should become a binding promise on the part of the defendant. Comp. Stat. 1921, sec. 5004, provides that "consent is not mutual unless the parties all agree upon the same thing in the same sense," while section 5051, Id., provides that "however broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

Defendant's executory promise could not be binding on him until Bridges tendered what defendant would accept as performance of the executory undertakings of Bridges.

These executory undertakings of Bridges were to make a renewal or extension lease for three years, and to satisfy defendant that his use of any or all of the demised premises for the purpose for which he intended to use them would not be objected to by parties then occupying or thereafter to occupy a certain 50-acre tract during the 3-year period. Performance of neither of these executory undertakings was ever tendered by Bridges so far as is disclosed by the pleadings and evidence. Comp. Stat. 1921, sec. 5077, provides:

"A party to a contract may rescind the same in the following cases only: First * * * ; Second, If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part."

Upon rescission the party rescinding is required to act promptly upon discovering the facts which entitle him to rescind, and to restore to the other party everything of value which he has received under the contract. (Section 5079, Id.) This defendant did by removing from the premises on or about January 1, 1924.

Both parties discuss in their briefs the application of the fifth subdivision of the statute of frauds, and the rule as to undisclosed principals, in their arguments upon the trial court's action is sustaining the demurrer to plaintiffs' evidence under this second cause of action, but in the view taken of the case here these contrary contentions upon these questions need not be further considered.

For the reasons herein stated the judgment of the trial court is vacated as to plaintiffs' first cause of action with directions to enter an order overruling defendant's demurrer to plaintiffs' evidence thereunder and to proceed with the trial. The judgment of the trial court as to plaintiff's second cause of action is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 563. §528; p. 629. §696; p. 694: §787. (2) 27 C. J. p. 319. §404.