## G. B. STONE REALTY CO. v. PERRINE.

No. 23507. May 19, 1936.

Gordon Stater, for plaintiff in error.

Hall & Thompson and Hugh E. Tyson, for defendant in error.

RILEY, J. This is an action by plaintiff in error for the recovery of a broker's commission claimed by plaintiff for the procurement of a lessee for defendant.

Defendant listed her property with plaintiff for lease, and plaintiff procured from the Midwest Enterprise Company, a corporation, an offer in writing to lease the property, which offer was accepted in writing by defendant. The offer of the Midwest Company offered: "To lease from you or owner the following described property (describing same) together with all building and improvements for a period of five years, seven and one-half (7½) months from May 15, 1927, to and including December 31, 1933." The conditions of the proposal for that period of time are not in controversy. The commission agreed upon for plaintiff's services as to that term was paid.

The accepted offer contained the following additional provisions:

"It is understood, however, that you are to give the undersigned an option to lease the above-described real estate and improvements for an additional period of ninety-four (94) years from and after January 1, 1933, at a fixed rental of nine thousand ($9,000.00) dollars per year, the undersigned to pay all ad valorem taxes that may be levied and assessed against said real estate and improvements then on said premises, or that may be erected at any time thereafter, and to pay in addition thereto the cost of keeping said property adequately insured against loss from fire, tornado or other destruction by the elements; and it is to be understood further that in the event the undersigned exercises its option to take a ninety-four year lease on said real estate and improvements, you will join in a mortgage, if requested to do so, covering said property for an amount not to exceed fifty per cent. (50%) of the actual cost of any building or improvements to be erected thereon.

"If this offer is satisfactory to you, a written lease is to be prepared and executed by both parties embodying the terms and provisions herein contained, and at the time of the execution and delivery of said lease the form of a ninety-four year lease covering said property is to be prepared and agreed upon mutually between the parties."

There was a written agreement between plaintiff herein and defendant concerning the commission to be paid as follows:

"Referring to the agreement to lease, this day entered into with the Midwest Enterprise Company, for a period of five years, covering Lots 24, 25, and 26, in Block 22, Original Plat, Oklahoma City, Oklahoma, we will charge a commission of $850.00.

"In the event they exercise their option and take the additional lease for 94 years, we will accept a commission of $3,875.00,

less $850.00, which is to be paid as commission on the five-year lease.

"Yours very truly,
"G. B. Stone Realty Co.,
"By S. B. Prewitt.
"April 14, 1927.
"Accepted:
"Ruby Perrine."

Plaintiff's claim is that the Midwest Company exercised their option to take the lease for the period of 94 years in accordance with the agreement between it and defendant, and that on account thereof plaintiff is entitled to the $3,025 additional commission agreed upon.

Defendant answered, admitting that the Midwest Company, in September, 1928, served upon her a notice of their election to take the property for the extended term of 94 years, and in connection therewith asked for a conference to negotiate for a lease to cover said extended term and to agree upon form and stipulation for said extended lease; that several conferences were had and proposals and counterproposals were made, but that the parties never could and never did agree upon the terms and execute a lease, and that negotiations were finally abandoned, and that defendant afterwards sold her property, and that the Midwest Company quitclaimed its interest to the purchaser, so that the lease was never entered into, and therefore plaintiff's services were ineffective so far as procuring a lessee for the 94-year period was concerned.

The cause was by agreement tried to the court without a jury, and at the close of plaintiff's evidence a demurrer thereto was presented by counsel for defendant, and sustained by the court, and judgment was entered for defendant, and plaintiff appeals.

The contention of plaintiff is that, although no extended lease was entered into, the Midwest Company in effect unconditionally exercised its option, and was, at the time and thereafter until defendant sold the property, ready, willing, and able to lease the property and carry out its agreement in accord with the terms thereof.

The record discloses that no written lease was ever prepared and executed by the parties, for the primary term of five years seven and one-half months before the Midwest Company exercised or attempted to exercise its option for the extended time. For some reason, not clearly appearing from the record, the Midwest Company went into possession of the premises under the proposal and acceptance, without any written

lease. This appears to have been satisfactory to the defendant, Ruby Perrine, as she accepted the rental agreed upon down to the time she sold the property, and paid plaintiff herein the $850 agreed upon as commission on the five-year primary term.

Plaintiff contends that it was wholly the fault of defendant that the 94-year lease was not consummated, in that she insisted that a number of conditions be embraced in the long-term lease not covered by or within the terms of the option.

If this be true, plaintiff was entitled to its commission notwithstanding the fact that the lease was never consummated.

On the other hand, defendant contends that the Midwest Company insisted upon including within the terms of the long-time lease, matters and things to her detriment and not within the option agreement.

The evidence shows that sometime after the Midwest Company went into possession of the premises, it prepared, signed, and presented to defendant a lease contract covering the five year and seven and one-half month period, and other matters concerning the 94-year lease and a five-foot alleyway.

This instrument contained additional provisions to the effect that in the event of the partial or total destruction of the improvements on said premises by fire or other casualty, the lessee might elect to repair or rebuild during the term or extended term of the lease, using the proceeds of any insurance for such purpose, and providing for suspension of the rentals during such time as the improvements were not available and suitable for occupation, and further providing that in the event that the lessee elected not to repair or rebuild, then the proceeds of insurance policies should be paid to the lessor, but that the lease should not be considered as canceled except at the option of the lessee. Other matters were included providing for the removal by lessee of all its furniture, fixtures, equipment, or other personal property at the termination of the lease, provided it had complied with all the terms of the lease.

In addition thereto the proposed lease gave the lessee the exclusive right and option to extend said lease contract for the extended term, with all the provisions, covenants, and agreements covering the primary term, "subject only to the following changes and modifications." Then followed four subsections, the first of which did not materially depart from the original agreement,

but contained matters not mentioned therein.

The fourth subsection provided:

"(d) The lessor shall, upon the written request of the lessee, join in any mortgage or mortgages covering said real estate and improvements in any amount or amounts not to exceed fifty (50%) per cent. of the actual cost of said property, buildings and improvements, it being understood that she shall not be required to sign any notes or become obligated in any manner for and on account of the construction or erection of improvements or any indebtedness caused thereby except as to such liability against said real estate and improvements that may arise by virtue of said mortgage or mortgages."

The defendant declined to accept and sign said proposed lease. Instead, she had prepared and submitted to the Midwest Company a proposed lease covering the five years seven and one-half months term. That part of the lease relative to said primary term covers six pages of the record and contains many additions to the terms of the original agreement, some of them material and others not.

It then contains 14 pages of proposed conditions of the 94-year term, many of which were entirely foreign to the original agreement.

This was not acceptable to the Midwest Company, and said company prepared still another form of lease and provisions relative to the 94-year term. It is 13 pages long.

In submitting it to defendant the Midwest Company, through its attorney, wrote a letter to the attorneys representing Mrs. Perrine, stating in substance that he had redrawn the lease and thought he met most of Mrs. Perrine's suggestions. But as redrawn the proposed contract contained a requirement that the lessor should, upon written request of the lessee at any time during the extended term of the lease, except the last ten years thereof, join with the lessee in the execution of any mortgage or mortgages lessee might desire to place upon the real estate and improvements, in any amount not to exceed 50 per cent. of the actual cost of the buildings and improvements at the date of the execution of such mortgage or mortgages, with the further proviso that lessor should not be required to sign any note, but specifically obligating lessee to pay the principal and interest of the debt secured by such mortgage or mort-

gages. It contained a provision to the effect that in case of total destruction by fire of the buildings the lessee should have the option whether or not to rebuild, and in case it elected not to rebuild, to pay all insurance collected to lessor, with an option in the lessee to consider the lease canceled.

Mrs. Perrine, through her attorney, rejected the lease as redrawn. But on the same day the letter rejecting same was written, counsel for Midwest Company wrote a letter to counsel for Mrs. Perrine, stating in substance that he had sent a copy of the lease as redrawn to Mr. Sinopoulo, president of the Midwest Company, and that there were two or three "objectionable features" he would want eliminated. What these were was not stated.

It thus appears from the evidence that there were two or three provisions, not within the original option agreement, that the Midwest Company insisted should go in the lease, and to which Mrs. Perrine was objecting. There were probably others not clearly explained in the evidence.

On September 20, 1928, after Mrs. Perrine had been served with a written instrument purporting to be a formal notice of the exercise of the Midwest Company of the option to take the 94-year lease, counsel for said company wrote counsel for Mrs. Perrine expressing regret that the parties had been unable to agree, and then stated:

"It occurs to the writer that you should arrange for an early conference between our client and Mrs. Perrine, and if they cannot agree upon all of the terms of the long term lease, they should at least ascertain that they cannot agree so that we can go to a court of equity and have the court fix the terms of the lease. Our client does not want to be delayed indefinitely in the matter of working out these details and getting started on its improvements."

Nothing further appears to have been done until April 21, 1930, at which time Mrs. Perrine executed a deed conveying the property to the Oklahoma Office Building Company, subject to "offer to lease" of April 14, 1927.

On April 29, 1930, the Midwest Company assigned all its interest in the "lease or option to lease" to said office building company.

The rule with reference to options of the nature of the one here involved, is that the lessee cannot exercise an option different in scope from the precise option conferred upon him by the instrument creat-

ing same. He cannot require the lessor to do more than is called for by the stipulations of the instrument creating the option. If he does so, this is in effect a rejection of the offer. 35 C. J. 1042.

"An acceptance of an option on conditions not contained in the contract between the parties and requiring the one giving the option to do more than called for by a contract amounts to a practical rejection thereof." Tilton v. Sterling Coal & Coke Co. (Utah) 77 P. 758.

Plaintiff in its petition alleged that: "The said lessee has exercised its right, and has taken such lease upon said property, and the defendant had delivered to the plaintiff" (meaning, the lessee) "or is delivering the said lease for the full term of 99 years."

This allegation plaintiff wholly failed to prove. The evidence shows that the lease for the full term of 99 years was never executed or delivered.

The position of plaintiff is that it is sufficient if the Midwest Company was ready, able, and willing to take the property upon the terms outlined between the lessee and defendant.

It is true that the president of the Midwest Company and its attorney both testified that they advised defendant that said company was ready, able, and willing to take the property for the additional 94 years under the terms and conditions outlined in the instrument.

It is also true that when it came to the matter of executing a lease as called for by the option agreement the Midwest Company, as well as defendant, insisted upon putting additional provisions therein.

On this question Mr. C. I. Johnson, counsel for the Midwest Company during the whole negotiations, testified:

"I finally told you that it was quite immaterial to me whether you signed anything or didn't because both parties were proposing to put things in the new instrument that were different from the other instrument and if we couldn't get together I would be willing to let the whole thing stand."

It matters not whether defendant was insisting that additional and different things be put in the lease. Plaintiff could not recover in this case unless it proved that the Midwest Company was ready, able, and willing to take the lease for the 94-year period upon and within the precise terms of the option. The most it ever did do was to propose, or threaten, to go into a court of equity in an effort to have eliminated from

the lease matters insisted upon by defendant and objected to by it, and have incorporated the things insisted upon by it and objected to by defendant, or, as expressed by some of the witnesses, "Let the court write a lease for them."

This was by no means an unconditional exercise of the option granted.

We hold that there was no error in sustaining the demurrer to plaintiff's evidence.

The judgment is affirmed.

OSBORN, V. C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS, WELCH, and CORN, JJ., absent.