464 P.2d 350

Amelie **POUQUETTE**, Appellant,

v.

**DOUBLE L–W RANCH, INC.**, an Arizona corporation, Appellee.

No. I CA–CIV 971.

Court of Appeals of Arizona, Division 1.

Department A.

Jan. 27, 1970.

Rehearing Denied Feb. 25, 1970.

Review Denied April 7, 1970.

Max M. Klass, Phoenix, for appellant.

Mangum, Wall & Stoops, by Douglas J. Wall, Daniel J. Stoops, Flagstaff, for appellee.

JACOBSON, Judge.

In this appeal from the Superior Court of Coconino County, a rather involved land transaction gives rise to a question as to the right of an assignee of a lease to exercise renewal options.

Plaintiff-appellee, Double L–W Ranch, Inc., brought a declaratory judgment action against defendant-appellant, Amelie Pouquette, seeking a declaration of the rights of the parties under a certain lease agreement. The trial court entered judgment in favor of the plaintiff declaring that a valid, subsisting and enforceable lease exists between plaintiff and defendant.

On April 1, 1955, the defendant, as lessor, entered into a written lease agreement with Kenneth B. Trapp and Arlene Trapp, as lessees, of certain unimproved real property situated in Coconino County. The lease provided for an initial term of ten years, with options to renew for additional ten-year periods up to and including the year 2005, at a rental rate of $600.00 a year, payable $350.00 at the commencement of the term on April 1 and $50.00 per month thereafter. All extension periods under the lease were at the same rental. Options to extend the lease which were conditioned on lessee not being in default, were to be exercised in writing between January 1 and March 1 of the year of termination.

The lease further provided that lessees were entitled to sell, assign, mortgage or otherwise deal with the leasehold estate, without prior consent of the lessor, and also provided for twenty-days notice by the lessor of any default by the lessees in performing the terms of the lease, including failure to pay rentals, during which period lessees were allowed to correct the default.

On May 23, 1957, the Trapps sold and assigned their leasehold interests to Norman B. Sharber and Rayma L. Sharber. On July 10, 1963, the Sharbers entered into a written agreement with the plaintiff to sell and convey their leasehold interest in the subject property to plaintiff. This agreement provided, among other things,

that the Sharbers would have the right to cancel the agreement in the event plaintiff failed to make rental payments due under the lease or payments due under the agreement of sale. The agreement further provided that plaintiff was to cause all renewal options in the original lease agreement to be exercised.

Since the Sharber agreement of July 10, 1963, contained a payment schedule for the balance of the purchase price to be paid by plaintiff to the Sharbers, the agreement was escrowed with Northern Arizona Title Company and a written assignment of the lease was delivered to the escrow agent with instructions to deliver the same to plaintiff upon payment of all sums due under the agreement. The escrow agreement also provided that all rentals due under the original lease with defendant were to be paid to the Title Company and forwarded to the defendant. The defendant was informed orally of the acquisition by plaintiff of Sharber's interest in the lease. The plaintiff continued to make regular monthly payments required under the lease until March 1, 1964.

Following the March 1, 1964, date, plaintiff made periodic payments in lump sums representing several months' rent. The accounting by the escrow holder caused the parties to become confused as to the exact status of payments under the lease, although it is undisputed that during this period of confusion, defendant did not object to late payments or lump sum payments covering several months, and never requested that plaintiff make the exact monthly payments on the dates and in the amounts required by the original lease agreement.

During this period when confusion existed as to whether rent was current, in arrearage, or paid in advance plaintiff, on December 14, 1964, caused written notice of its intention to extend the lease for an additional ten years to be sent to the defendant. In October, 1964, prior to the time this notice was sent, plaintiff forwarded to the defendant a check for the sum of $150. In actuality, as determined by an accounting, this $150 check represented rental for the extended term of the lease commencing on April 1, 1965. Although the notice of intent to exercise the option to extend the lease was received by defendant prior to the January 1 date specified in the lease, no objection was made by the defendant until this action was commenced and the trial court specifically found that defendant was not prejudiced by the early notice. Moreover, defendant negotiated the $150 check forwarded in October, 1964, and no tender of return of this sum was made by the defendant until after the trial commenced in 1968.

On May 21, 1965, the plaintiff submitted to the title company a check for $300.00 to be forwarded to the defendant as rental. Because of the confused status of the rental payments, the title company requested an additional $150.00, which request was complied with by plaintiff. These sums, less the title company's charges were forwarded to the defendant. This payment would have placed the lease rental payments current as of July 1, 1965. On July 21, 1965, the defendant through her attorney, notified plaintiff that she was forfeiting plaintiff's leasehold interest immediately because plaintiff was in default and could not renew, and returned the last payment received to the title company. Prior to July 21, 1965, defendant had not given plaintiff any notice of default, as required by the original lease.

Plaintiff brought this declaratory judgment action in August, 1965.

Defendant, in her brief, presents several questions for review which together question the right of plaintiff to exercise the option to renew. She also raises several questions concerning the timeliness of payments under the lease. At time of oral argument, however, counsel for defendant agreed that the defendant, by her prior actions, had waived any requirement that payments be timely made in accordance with the terms of the lease.

Defendant's primary argument is based on the proposition that since the agreement of July 10, 1963, between plaintiff and Sharbers retained in Sharber the power to forfeit plaintiff's interest in the leased premises, plaintiff as a matter of law was not an assignee of the lease, but merely a sub-tenant who had no power to exercise options to renew in its own name. Cf. First Trust Co. v. Downs, 230 S.W.2d 770 (Mo.App.1950).

We need not, however, determine whether plaintiff was an assignee of Sharber or a sub-tenant of Sharber. If plaintiff was an assignee, it was entitled in its own right to exercise the option to renew the original lease. Penilla v. Gerstenkorn, 86 Cal.App. 668, 261 P. 488 (1927); 51C C.J.S. Landlord and Tenant § 58(2) (b) (1968). On the other hand, if plaintiff was a sub-tenant of Sharber its right to renew or extend the original lease depended on whether the agreement with Sharber allowed the plaintiff to do so. 51C C.J.S. Landlord and Tenant § 58(3) (1968); cf. Loudave Estates, Inc. v. Cross Roads Improvement Co., 28 Misc.2d 54, 214 N.Y.S.2d 72 (1961); Michael's Distributors v. New York City Soc. of Methodist Church, Sup., 101 N.Y.S.2d 85 (1950). This agreement specifically provided that plaintiff should exercise all options for renewal of the original lease. Therefore, even if plaintiff was a sub-tenant of Sharber it had the right to renew the original lease because of its contractual agreement with the tenant. The fact that an option to renew is a covenant running with the land does not help the defendant, for such a covenant may be assigned by contract and that was obviously done here. Bradley v. General Store Equipment Corp., 183 Misc. 199, 51 N.Y.S.2d 420 (1944); Annot., 29 A.L.R.2d 837 (1953).

Defendant next contends that by her receiving notice of plaintiff's intent to renew the lease prior to the January 1st date contained in the lease for such notice, she was not bound thereby. Normally, where a lease provides that an option to renew be exercised within a certain time,

failure to give notice within that time limitation relieves the lessor from the obligation of renewing the lease. Wolf v. Tastee Freez Corp. of America, 172 Neb. 430, 109 N.W.2d 733 (1961). However, this right of strict compliance with the terms of the lease may be waived. Wolf v. Tastee Freez Corp. of America, supra. Here, the evidence revealed that notice was given approximately two weeks prior to the time called for in the lease; that notice could be made any time during a two-month period; that no objection was made to this premature notice until suit was filed; and that advance payments were made applicable to the renewal term and defendant did not tender return of these moneys until after commencement of trial. Moreover, the trial court found defendant was not prejudiced by this premature notice. Under such circumstances we hold there was sufficient evidence for the trial court to find that the defendant had waived strict compliance with the notice requirements in the lease.

It having been agreed in oral argument that those provisions of the lease requiring strict compliance with payment of rentals had been waived, we need not discuss any other contentions raised by defendant.

Judgment affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.