Charles D. CASTLE, Appellant,

v.

DOUBLE TIME, INC. and R & R Foods, Inc., Appellees.

No. 61815.

Supreme Court of Oklahoma.

Dec. 9, 1986.

Rehearing Denied June 16, 1987.

Ronald G. Raynolds, Tulsa, for appellant.

Rodney A. Edwards, Messrs. Jones, Givens, Gotcher, Doyle & Bogan, Tulsa, for appellee R & R Foods, Inc.

OPALA, Justice.

Two issues are presented: [1] Did the trial court err in admitting into evidence unsigned substitute documents that were offered to prove the contents of the lost original documents? and [2] In the face of the landlord's objection, did the subtenant alone—without being joined by the tenant—have the power to exercise an option to extend the lease for an additional period? Our answer to the first question is in the negative and to the second in the affirmative.

### THE ANATOMY OF LITIGATION

The landlord leased certain commercial real estate to the tenant for a five-year term with options to renew or to extend the primary lease term for two additional five-year periods at a specified increased rental. *The lease provided that, while the tenant could assign or sublet the property, any transfer by assignment would not release the tenant from its liability on lease obligations.*

Midway through the lease's primary term, the tenant ceased doing business and sold its lease to the subtenant. As part of the sales transaction, the tenant executed two documents in favor of the subtenant. One of these, the "Assignment of Lease," purported to transfer to the subtenant *all the tenant's rights and obligations under the original lease.* A document entitled "Sublease" also effected the transfer of all the tenant's rights and obligations *except for a provision that the tenant, upon appropriate notice from the subtenant, would exercise the options to renew or to extend the original lease in favor of the subtenant.*

Near the conclusion of the primary term, the sub-tenant notified the landlord that it had elected to exercise its option to extend the lease for an additional five-year term. The landlord objected on the ground that only the tenant could exercise this option. Soon thereafter the landlord brought this action for possession of the property and for damages from the subtenant's alleged hold-over occupancy of the premises. The trial court denied the landlord any relief and ruled that the subtenant had effectively exercised the option to renew. This disposition was affirmed by the Court of Appeals in an unpublished opinion.

I

### THE UNSIGNED DOCUMENTS WERE PROPERLY ADMITTED INTO EVIDENCE

■ The landlord argues that the best evidence rule [1] precluded the admission into evidence of the unsigned substitute copies of the assignment and sublease. After hearing evidence that the original documents had been stolen and the copies lost, the trial court admitted and considered substitute copies of the documents under the authority of 12 O.S.1981, § 3004.[2] We hold

---

1. 12 O.S.1981, § 3002.

2. Pertinent terms of 12 O.S.1981 § 3004 provide:

"The original is not required, and other evidence of the contents of a writing ... is admissible if:

that the substituted copies constitute admissible evidence to prove the contents of the original writings. Proper predicate for admission had been laid by proof which showed that the originals had been stolen and the duplicates lost.

## II

### THE SUBTENANT COULD ALONE EXERCISE THE OPTION TO EXTEND THE LEASE'S PRIMARY TERM

The legal norms governing the landlord-tenant relationship are unique because two pervasive theories—those from the law of grants and those of contracts—merge to govern disputes arising from the landlord-tenant interaction. Accommodation of these two theories is necessary to provide the framework of analysis to be employed in resolving the present issue; namely, does the subtenant alone (i.e. without being joined by the tenant) have the power to exercise the original lease's option for an additional term in the face of the landlord's objection?

■ The law of grants holds that a subtenant, who is in privity of estate with the original lessor, may avail himself of any covenants in the original lease which "touch and concern" the land (real covenants). The law of contract allows the lessor to create what the grant theory would term "a real covenant personal to the lessee" and hence non-assignable. By this innovation, the law of contract has emerged victorious in its struggle to vanquish the grant concept and thus attain dominance over the cluster of rights encompassed within the status created by a landlord-and-tenant relationship. A call for resolution of the issue here thus beckons us to answer these questions:

 1. All originals are lost or have been destroyed ...;
 2. No original can be obtained by any available judicial process or procedure; * * * "

**3.** *Cicinelli v. Iwasaki,* 170 Cal.App.2d 58, 338 P.2d 1005, 1009 [1959].

**4.** *Snow v. Winn,* Okl., 607 P.2d 678, 681 [1980]; Restatement, Second, Property (Landlord and

A. Is the subtenant in privity of estate with the landlord?

B. Does the option to extend the lease for an additional period run with the land?

C. Is there anything in the lease provisions which renders the option personal to the tenant?

### A

■ In order to exercise the option for a period additional to that contained in the original lease—assuming for the moment such an option "runs with the land"—the subtenant must be in privity of estate with the landlord.[3] This status is accorded a subtenant who takes his interest by assignment rather than by sublease. An assignment contemplates the transfer of the whole, or some severable part, of the transferor's interest for the remainder of the lease term.[4] A transfer of a non-severable portion of the lease, or one which leaves the transferor a reversion, would be a sublease.[5]

The transfer of the tenant's interest in the lease to the subtenant involved two documents. One of these, entitled "Assignment of Lease," transfers to the subtenant "all of our estate, right, title and interest in and to said lease." Another document, entitled "Sublease," likewise purports to transfer to the subtenant all of the tenant's interest in the original lease. It further provides that the tenant, upon appropriate notice from the subtenant, will exercise for the benefit of the subtenant the original lease's options for additional terms. Thus it is arguable that this document reserved a portion of the tenant's leasehold[6]—the possibility that the tenant might exercise the option for an additional period in its own favor should the subtenant fail, or not desire, to so do by notifying

Tenant) § 15.1, comment (i), pp. 90–91 [1977] and Annot., Assignee's right to enforce lessor's covenant to sue or extend lease, 29 ALR2d 837, 838.

**5.** See footnote 4 *supra.*

**6.** *Danaj v. Anest,* 77 Ill.App.3d 533, 33 Ill.Dec. 19, 20–21, 396 N.E.2d 95, 96–97 [1979].

the tenant of its intention to extend the lease term.

We have little difficulty reaching the conclusion that the tenant and subtenant intended to effect an assignment rather than a sublease. Firstly, the effect of the two documents must necessarily culminate in a legal assignment. It is unclear why two instruments, apparently executed simultaneously, were used to effect the single transfer. If the assignment preceded the sublease, the tenant had nothing left of its estate to reserve for itself.[7] Therefore, execution of the sublease would be ineffective to create a right in the tenant to exercise the renewal in its own favor. Likewise, if the assignment followed the sublease, the retained interest in the sublease would be considered surrendered to the subtenant by the later assignment. Secondly, and more importantly, *it is clear that the parties intended that the subtenant should take the tenant's entire interest* in the original lease. It is inconceivable that a tenant desiring to retain an interest in a lease would execute any document which purported to convey "all of our estate, right ... in said lease." The only reasonable conclusion to be drawn is that a legal draftsman's overabundance of caution prompted the execution of both documents. The drawer of the language in the redundant sublease, which arguably

contained reversionary language probably taken from a form contract, recognized that the *tenant* would have to exercise an option to extend the lease term. Since a sublessee lacks privity of estate with the original lessor-landlord, the sublessee cannot alone avail itself of a covenant in the original lease even if the covenant "runs with the land." The inference that the parties intended here an assignment is further buttressed by the fact that the tenant had ceased doing business and probably had neither an interest nor a purpose in retaining for itself a reversion in the leasehold.[8]

**B**

 Absent explicit contrary contractual provisions, an option to renew or to extend a lease given to a lessee by the lessor is freely assignable by the lessee.[9] The rationale for this proposition is that such an option "touches and concerns the land" and therefore runs with the land.[10]

Because the subtenant, *qua* assignee, stands in privity of estate with the landlord, and since the option for an additional term runs with the land, the subtenant can alone exercise the option unless a contractual provision [11] may operate to render the option personal to the tenant.

**7.** See footnote 6 *supra* at 97.

**8.** Since we find that the tenant and subtenant intended to effect a full assignment to the subtenant of the tenant's interest in the lease, the language in the inconsistent sublease, requiring the tenant, upon notification, to exercise the option in favor of the subtenant, should not be construed as defeating the subtenant's right to exercise the option in his own right.

**9.** *Tipton v. North,* 185 Okl. 365, 92 P.2d 364, 368–369 [1939]; *Dunaj v. Anest, supra* note 6, 33 Ill.Dec. at 22, 396 N.E.2d at 98; *Bevelheimer v. Gierach,* 33 Ill.App.3d 988, 339 N.E.2d 299, 302 [1975]; *Kaybill Corporation, Inc. v. Cherne,* 24 Ill.App.3d 309, 320 N.E.2d 598, 607 [1974]; *Edwards v. Tobin,* 132 Or. 38, 284 P. 562 [1930]; *Pouquette v. Double L–W Ranch, Inc.,* 11 Ariz. App. 279, 464 P.2d 350, 353 [1970]; *Nigro v. Don-Mar Corporation,* 369 Pa. 35, 85 A.2d 21, 22 [1951]; *Crenshaw–Gary Lumber Co. v. Norton,* 111 Miss. 720, 72 So. 140, 143 [1916]; *Edwards-Pickering Co. v. Rodes,* 203 Ky. 95, 261 S.W. 884,

885 [1924]; *Penilla v. Gerstenkorn,* 86 Cal.App. 668, 261 P. 488, 489 [1927] and Annot., 29 ALR2d, *supra* note 4 at 839.

**10.** See footnote 9 *supra.*

**11.** Restatement (Second) Property, Landlord and Tenant, § 15.1 [1977] provides:
"§ 15.1 Freedom of Transfer
The interest of the landlord and of the tenant in the leased property are freely transferable, unless:
(1) a tenancy at will is involved;
(2) the lease requires significant personal services from either party and a transfer of the party's interest would substantially impair the other party's chances of obtaining those services; or
(3) the parties to the lease validly agree otherwise."
The landlord does not contend that the assignment to the subtenant was ineffective pursuant to the exceptions provided by (1) or (2).

## C

A provision in a lease can transform what traditional grant-law theory would term a real covenant into one that is personal to the lessee and hence non-assignable.[12] Additionally, even if an option for an additional term is properly assigned, the subtenant cannot exercise an option which is different in scope from that given the tenant.[13]

The only provision in the lease which, as the landlord argues, makes the option for an additional period personal to the tenant, and thus non-assignable, is the notification provision. It is urged that, by specifying that the *tenant* must give appropriate notice of its intention to exercise the option, the subtenant could not alone avail itself of its benefit. The cases seem to assume without discussion that the tenant's assigns [assignees] can give any requisite notification.[14] This assumption appears reasonable since the obligation to notify is merely a portion of the bundle of the tenant's rights and obligations that is transferred by assignment to the subtenant. Had the landlord intended to make the option personal to the tenant, he could have *explicitly contracted* for such a result.[15]

Another lease clause presents greater difficulty in that it arguably renders it impossible for the subtenant to exercise the option without increasing the landlord's contractual burden created when he granted the option to the tenant. If so, then the subtenant's exercise of the option would violate the principle that the subtenant cannot exceed the scope of the option originally granted.[16]

The original lease provided that the tenant would in no event escape personal liability by assigning its interest. At first blush, this provision seems merely to restate the common-law rule that, absent novation, a lessee remains personally liable for lease covenants, even after assignment, because he is still in privity of contract with the lessor.[17] If the subtenant's exercise of the option for an additional period effects at law a novation of the tenant's personal liability under the lease, then a problem would arise. Since the landlord specifically contracted for the continuing liability of the tenant after assignment, an exercise of the option by the subtenant effecting an implied-in-law novation would arguably increase the landlord's burden to an extent which exceeds the scope of the obligation he originally agreed to assume. We must hence decide whether the subtenant's exercise of the option for an additional period resulted here in an implied-in-law novation of the tenant's personal obligations under the lease.

Some jurisdictions distinguish an option to renew a lease from an option to extend a lease.[18] In jurisdictions which recognize the distinction, an option to extend, when granted, is viewed as a present demise of the primary term plus any option periods. The demise is subject to defeasance should the tenant not exercise the option.[19] At the conclusion of the primary term, a mere hold-over occupancy by the tenant would constitute an election to exercise the option to extend. An option to renew, on the other hand, is viewed as a present grant of only the primary term of the lease coupled

12. See footnote 11 *supra* at § 15.1(3) and Annot., 29 ALR2d, *supra* note 4 at 839.

13. *G.B. Stone Realty Co. v. Perrine*, 177 Okl. 119, 57 P.2d 1195, 1198 [1936] and *Dunaj v. Anest, supra* note 6, 33 Ill.Dec. at 21, 396 N.E.2d at 97.

14. See footnote 9 *supra.*

15. *Edwards-Pickering Co. v. Rodes, supra* note 9 at 886.

16. See footnote 13 *supra.*

17. *Bevelheimer v. Gierach, supra* note 9 at 302; *Kornblum v. Henry E. Mangels Company*, 167 So.2d 16, 18 [Fla.App.1964]; *Connolly v. Rogers*, 292 Mass. 140, 197 N.E. 483, 485 [1935]; *Carrano v. Shoor*, 118 Conn. 86, 171 A. 17, 21 [1934] and Annot., Construction and effect of provision of sublease or assignment making it subject to, or assuming the provisions of the lease, 42 ALR 1173.

18. See Annot., Execution of new lease as within the contemplation of an option for extension or renewal of a lease, 172 ALR 1205.

19. See footnote 18 *supra.*

with a covenant to effect a grant of the option term in the future.[20] It is said that an option to renew requires the execution of a new lease for its effectuation. It is arguable that Oklahoma makes the distinction between an option to renew and an option to extend.[21]

Assuming that the option in question here is one for a "renewal," it then becomes arguable that the subtenant's execution of the requisite new lease, which would govern the option period, would effectuate a novation of the tenant's liability.[22] We need not reach this issue because we conclude, and hence hold, that the option granted to the tenant in the instant case was an "extension." A tenant does not escape liability for the extension period after his subtenant exercises the option to extend.[23] Since the execution of a new lease is not required for an exercise of the option to extend, the tenant's obligation

**20.** See footnote 18 *supra.*

**21.** In *Clifford v. United States Fidelity & Guaranty Co.,* 119 Okl. 133, 249 P. 938, 941 [1926], we stated in dicta that a new lease is required to be executed in order to exercise a renewal option in a lease. In *Bridges v. Lahman,* 124 Okl. 220, 255 P. 693, 695 [1927], we held that, under the facts of that case, a new lease would have been required in order to effectuate the option for an additional period, because it was evident that the terms which would govern the option period had not been agreed upon. In *Tipton v. North, supra* note 9 at 368, we stated that an option to "renew" constitutes a part of the lessees' present interest in the leasehold. A holding that the granting of an option to "renew" is a present demise of the option period as well as the primary term would seem to blur the distinction between a "renewal" and an "extension." In *First Nat. Bldg. Corporation v. Harrod,* 175 F.2d 107, 108–109 [10th Cir.1949], the 10th Circuit relied on *Clifford, supra,* to state that a new lease is required in order to effectuate a renewal option under Oklahoma law. The court determined that the option given in that case was an option to extend. Likewise, in *Continental Oil Company v. Ryan,* Okl., 392 P.2d 492, 489–499 [1964], we noted that *Clifford, supra,* and *Continental, supra,* had recognized a distinction between a renewal and an extension but went on to hold that the hold-over occupancy by the tenant in that case could constitute an election to exercise the option for an additional period. Implicit in the holding is a recognition that the execution of a new lease would not be required in order to effectuate the option granted.

From an examination of the cases we are not convinced that Oklahoma law *dictates* that we follow a distinction between an option to renew and an option to extend. We have yet to undertake a thoughtful analysis of the merits of such a distinction. In this regard, see Annot., 29 ALR2d, *supra* note 4 at 838. The only Oklahoma case which found that a new lease would be required was *Bridges, supra,* and that holding was premised on a finding that the terms which would govern the option period had never been agreed upon. The basis for this holding would apply to an option to extend as well. *In any event, our resolution of this case does not mandate that we determine whether Oklahoma law* in fact recognizes a distinction between an option to renew and an option to extend.

**22.** In *Connolly v. Rogers, supra* note 17, the original tenant was released from its personal obligation for the extension period of a lease after the subtenant and landlord executed a *new* agreement which provided that the subtenant would pay a higher rental than that contemplated in the original lease. The fact that the subtenant and landlord entered into a *new* agreement which increased the tenant's risk as surety for the subtenant by increasing the rental rate probably explains the result reached. Because the agreement entered into between the subtenant and landlord was different from that contemplated by the original lease with respect to the rental rate, the present case is distinguishable.

*Maybury Shoe Co. v. Rochester Factory Holding Co.,* 88 N.H. 172, 185 A. 654 [1936], held that an assignee could not exercise an option to extend where the lessee had notified the lessor he would not remain personally liable during the extension period. This case would support the argument that an assignee cannot alone exercise an extension option except that the case rests on a faulty premise. The case implicitly holds that a lessee can unilaterally abrogate its personal liability for the extension term. See *Maybury Shoe Co. v. Izenstatt,* 320 Mass. 397, 69 N.E.2d 666, 670 [1946], a related case in which the Massachusetts court recognized the fallacy in the New Hampshire court's argument but felt bound by New Hampshire law.

An examination of the cases does not yield an authority which presents the precise question involved—the liability of the tenant after the subtenant exercises an option to "renew" (as opposed to an option to *"extend"*). Cases have been found which deal with the liability of a guarantor of lease rentals for a renewal period. *Kanouse v. Wise,* 76 N.J.L. 423, 69 A. 1017 [N.J.1908] held that the guarantor would be released from liability for rent once the renewal option was exercised. The opposite result was reached by a very eminent court in *Jones & Brandisi v. Breslaw,* 250 N.Y. 147, 164 N.E. 887 [1928] and also in *Heffron v. Treber,* 21 S.D. 194, 110 N.W. 781 [1907].

**23.** *Kornblum v. Henry E. Manguls Company, supra* note 17.

under the original lease continues for the entire period demised in the original lease and includes the extension period.[24]

In jurisdictions which recognize a distinction, it is well settled that the intention of the parties controls the determination whether the option for an additional period is one to renew or one to extend.[25] If indeed the distinction is recognized by Oklahoma law,[26] then the determination whether a renewal or an extension was contemplated will be governed by the intention of the parties when they executed the original lease.[27]

The lease executed by the landlord in this case specifically states that "[a]ll of the terms and conditions of this Lease shall apply to and bind the Landlords and Tenant during any renewal...." The only exception was that a new base rental would be negotiated between the parties to govern the option period but, in the event negotiations did not yield a rental rate, the tenant could exercise the option at a specified maximum rental amount. It is clear that under such lease provisions the option will be considered an extension rather than a renewal.[28]

Had the option as originally drawn not contemplated the increased rental up to a specified maximum amount, then perhaps a novation of the tenant's liability for the extension period would have occurred if the landlord and subtenant had negotiated an increased rental rate. But under the lease as drawn, the specified maximum rental was contemplated and hence liability up to that amount was agreed upon by the tenant at the time of the original execution. After the assignment of tenant's interest in the lease, if the subtenant exercised the option at the maximum rental rate, the tenant could not escape liability by arguing that its risk had been increased beyond that which it agreed to assume when it

became obligated for the terms of the lease. We accordingly hold that the tenant remained personally liable as surety by operation of law for the subtenant's obligation to pay rent during the extension period.

Since there is nothing in the lease in suit which prevents its assignee from invoking the common-law rule that the assignee of a lease can alone exercise the option to extend a lease, the decision reached by the trial court is correct. Though we leave the trial court's judgment undisturbed, as did the Court of Appeals, we nonetheless, *on certiorari previously granted, vacate the opinion of the Court of Appeals.* This is so because our pronouncement rests upon a rationale drastically different from that of the Court of Appeals.

*Trial court's judgment is affirmed.*

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

KAUGER, J., concurs in part and dissents in part.

WILSON, J., dissents.

ALMA WILSON, Justice, dissenting:

The contract in question between Mr. and Mrs. Castle [designated and referred to in said instrument as "Landlords"] and Double Time, Inc., [designated and referred to in said instrument as "Tenant"] leased for a period of five years a storeroom located in a shopping center building *subject to certain specified terms, conditions* and *provisions.* The fourth provision of the contract of lease granted "Tenant" [Double Time, Inc.] a conditional option to create anew its lease agreement with "Landlords" [the Castles] upon the following covenant:

**24.** See footnote 17 *supra.*

**25.** *Carrano v. Shoor, supra* note 17 at 20; *Chalkley v. Ward,* 119 Ga.App. 227, 166 S.E.2d 748, 753 [1969]; *Crenshaw-Gary Lumber Co. v. Norton, supra* note 9 at 143–144 and *Edwards-Pickering Co. v. Rodes, supra* note 9 at 886–887.

**26.** See footnote 21 *supra.*

**27.** *Continental Oil Company v. Ryan, supra* note 21.

**28.** *Tipton v. North, supra* note 9 at 368–369 and *Continental Oil Company v. Ryan, supra* note 21 at 498–499. See also cases cited in footnote 25.

## LEASE

THIS LEASE, made and entered into on May 18, 1978, between Charles D. Castle and Lucy A. Castle ["Landlords"] and Double Time, Inc., an Oklahoma corporation ["Tenant"];

. . . . .

4. *Options to renew:* Tenant [Double Time, Inc.] shall have the right, at *its* option, to renew this lease for an additional five year term beginning July 1, 1983, and ending June 10, 1988, and if it renews for such additional term it shall have the right, at its option, to *renew* this Lease for a second additional five year term beginning July 1, 1988, and ending June 30, 1993. *Tenant* [Double Time, Inc.] shall notify Landlords [the Castles] of *its* election to *renew* by written notice delivered to them *on or before April 30* next preceding expiration of the term or renewal term thereof. *All* of the terms and conditions of this Lease shall apply to and bind the Landlords [the Castles] and Tenant [Double Time, Inc.] during any renewal hereof except that a new Base Rental shall be mutually agreed upon in writing by Landlords and Tenant before commencement of the renewal term, which new Base Rental shall not exceed $30,000.00 for the first renewal term and shall not exceed $37,500.00 for the second renewal term. The Base Rental for each renewal term shall be payable to Landlords in 60 equal monthly installments, commencing July 1, 1983, and July 1, 1988, respectively.

If the parties have not reached written agreement as to the new Base Rental before commencement of the renewal term Tenant may, at its option, either: (a) withdraw the exercise of its option to renew and vacate and surrender the premises as upon termination hereof or (b) pay to Landlords on the applicable first-day of July 1/60 of the maximum Base Rental fixed above, in which latter event the Lease shall without more be renewed for the whole renewal term, with Base Rental payable for the full term of such renewal. [Emphasis ours]

. . . . .

"Tenant" [Double Time, Inc.] at no time ever notified "Landlords" [the Castles] that *it* ["Tenant", Double Time, Inc.] elected to exercise the option to renew. In fact, "Tenant" [Double Time, Inc.] although served has made no appearance in this matter and remains at trial or on appeal in default. The record is wholly without benefit of "Tenant's" [Double Time, Inc.] testimony or participation. Permitting a stranger to the contract, such as the Appellees-sublesses to claim the purely contractual rights of another is contrary to the express contractual intention in this case and works to deprive relevant parties of the benefit of their bargain. Restatement of the Law, Property 2d Landlord and Tenant, § 16.1(1)(a) reads as follows:

> Obligation Created by an Express Promise—Burden of Performance After Transfer.
>
> (1) A *transferor* of an interest in leased property, who immediately before the transfer is *obligated to perform an express promise* contained in the lease that *touches and concerns* the transferred interest, *continues* to be *obligated after* the *transfer* if:
>
> (a) The *obligation rests on privity of contract*, and he is *not relieved* of the obligation *by* the *person entitled to enforce it.* [Emphasis added.]

Here, I am of the opinion that the parties agreed that Double Time, Inc., and Double Time, Inc. alone, bore the obligation to notify the Castles of any intention to exercise the option to renew. Because this obligation of Double Time, Inc. is created by contractual agreement and rests solely upon privity of Contract, Double Time is *not* relieved of such obligation regardless of any alleged third party rights based on "privity of estate".

Were it not true here that the parties intended to render exclusive the covenant to notify, then I could acquiese in granting the sublessee/assignee the benefit of the covenant which encumbers the reversionary interest of "Landlords" [the Castles];

however, the promise of Double Time, Inc. conditions renewal upon *its* notice of election. The landowner under these circumstances thus is not forced to renew a lease without the participation of the party with whom he contracted. The contract under consideration specifically provided the right of the Landlords "to look to the *Tenant* [Double Time, Inc.] for the performance of all the covenants to be performed". This I believe includes the right to notification by the designated Tenant, Double Time, Inc.